Randy J. PINKERTON, Appellant,

v.

JELD–WEN, INC. d/b/a Wenco of Iowa, Mark King, Chris Simon, and Bill Maschmeier, Appellees.

No. 97–1049.

Supreme Court of Iowa.

Dec. 23, 1998.

David S. Wiggins of Wiggins, Anderson & Conger, P.C., West Des Moines, for appellant.

Stephen T. Brennecke of the Brennecke Law Office, Grinnell, for appellees.

Considered by HARRIS, P.J., and LARSON, CARTER, NEUMAN, and TERNUS, JJ.

HARRIS, Justice.

We agree that an employer did not violate an Iowa statute, since revised, that protected jobs for certain persons undertaking drug treatment. We also agree that an administrative law judge's unemployment compensa-

tion decision was not res judicata on the issue now in dispute. So we affirm rejection of a discharged employee's claim.

Although the legal issues are vigorously disputed, we would be hard-pressed to criticize this long-suffering employer's progressive and benevolent reaction to its employee's struggle to address a serious drug abuse problem. In March 1993, Jeld–Wen, Inc. d/b/a Wenco of Iowa hired plaintiff, Randy Pinkerton, to work in the company's window factory. Pinkerton represented on his job application that he had only one (in 1991) felony criminal conviction for OWI. The truth was strikingly worse. Pinkerton deliberately omitted revealing at least two third-offense OWI convictions prior to the one in 1991.

A year after taking the job, Pinkerton went to Bill Maschmeier, the production manager of the factory, to report he had again been arrested for OWI. After freely discussing his alcohol and drug abuse problems, Pinkerton acceded to Maschmeier's suggestion that he seek help. The company then arranged for treatment at a local substance abuse treatment facility known as Substance Abuse Treatment Unit of Central Iowa (SATUCI). Pinkerton reported to SATUCI for evaluation and then initiated a course of treatment that was to last eleven months. Treatment was funded by insurance provided through Wenco.

To say the least the treatment program was not conspicuously successful. Pinkerton overdosed on methamphetamine in November 1994 and, by April 1995, started drinking again. Pinkerton was fired, but Wenco still did not give up on him. His supervisor said his job would be available when he completed the treatment program, still in progress. The promise was kept. He was rehired and passed a pre-employment drug screen at that time. Pinkerton was assigned to operating forklifts, moving glass window products in the factory. Because forklifts are dangerous, operators must use good judgment and extreme care to avoid accidents.

Notwithstanding Wenco's patience and the responsibilities demanded by the job, Pinkerton was intoxicated when he reported for work on October 25, 1995. When he began operating a forklift, it became obvious that he was a threat to his fellow workers. Because of his behavior and appearance Pinkerton's coemployees suspected that he was under the influence of alcohol or drugs. On Wenco's demand, a drug screen was conducted, the only one to which Pinkerton did not voluntarily submit. He tested positive for codeine, morphine, and opiate metabolites.

Pinkerton was again fired and thereafter applied for unemployment benefits. A job service representative denied unemployment benefits but an administrative law judge reversed on appeal. The reversal was based on a finding that Wenco discharged Pinkerton solely because he tested positive for drugs on the specimen taken October 25, 1995. The administrative law judge found Wenco failed to comply with Iowa Code, section 730.5(3)(f) (1997) and determined Pinkerton should receive unemployment benefits.

Pinkerton later filed this petition against Wenco and individual officers for relief under Iowa Code section 730.5. Because the claim against the individuals is derived from their association with Wenco, all defendants will be referred to in the singular as Wenco. The matter is before us on Pinkerton's appeal from the district court's rejection of this suit following a bench trial.

■ I. Our review of the challenged legal determinations of the district court is on error. Iowa R.App. P. 4. Pinkerton also sought injunctive relief which would be a matter in equity which we review de novo. Iowa R.App. P. 4; *State ex rel. Department of Human Servs. v. Antle,* 433 N.W.2d 42, 43 (Iowa App.1988).

■ II. Pinkerton challenges the trial court's refusal to hold his claim was already established in the unemployment compensation proceeding because the favorable decision of the administrative law judge was res judicata as to this suit.

■ A final adjudicatory decision of an administrative agency is regarded res judicata the same as if it were a judgment of the court. *State ex rel. Department of Natural Resources v. Shelley,* 512 N.W.2d 579, 580 (Iowa App.1993). Iowa law regarding claim preclusion closely follows the Restatement

(Second) of Judgments. *Shumaker v. Department of Transp.*, 541 N.W.2d 850, 852 (Iowa 1995). Res judicata principles however have exceptions. On the basis of the scheme-of-remedies exception we affirm the trial court's refusal to apply res judicata principles here. It is explained in Restatement (Second) of Judgments section 83(3) this way:

██ An adjudicative determination of a claim by an administrative tribunal does not preclude relitigation in another tribunal of the same or a related claim based on the same transaction *if the scheme of remedies permits assertion of the second claim notwithstanding the adjudication of the first claim.*

(Emphasis added.) We applied the scheme-of-remedies exception in *In re Kjos,* 346 N.W.2d 25 (Iowa 1984), noting

that by establishing one administrative remedy for challenging the discharge and a separate remedy for seeking unemployment compensation the legislature has provided a scheme of remedies in which an adjudication of one claim will not bar the other. This case thus falls within the common scheme of remedies exception in Restatement (Second) of Judgments § 83(3).

*Id.* at 29.

It would be poor policy to depart from that view in the present case, and we decline to do so. Employers should be encouraged to yield readily to an administrative award of unemployment benefits. Hardship would result to unemployed workers if employers, out of fear of unanticipated collateral consequences, felt impelled to exhaust all appeals in what should be a simple and largely informal administrative inquiry. The trial court correctly rejected Pinkerton's res judicata argument.

██ III. Pinkerton's theory of recovery is based on Iowa Code section 730.5.[1] In its ruling, the trial court succinctly described the provision this way:

As originally enacted, section 730.5 provided in relevant part that if a drug screen is returned positive the employer shall provide substance abuse evaluation and treatment with costs apportioned as provided under the employee benefit plan or at employer expense. If an employee whose drug test indicates the presence of alcohol or a controlled substance undergoes substance abuse evaluation and successfully completes substance abuse treatment, if recommended by the evaluation, [the] employer shall take no disciplinary action against the employee. This section does not restrict an employer's ability to prohibit the use of alcohol or controlled substances during work hours or to discipline employees for being under the influence of alcohol or controlled substances during work hours. This section may be enforced through a civil action.... An employee discharged, disciplined, or otherwise discriminated against in violation of this section shall be compensated by the employer in the amount of any loss of wages and benefits arising out of the discrimination and shall be restored to the employee's previous position of employment.

Noting that it considered the statutory scheme conflicting and confusing, the court continued.

Section 730.5 sets forth general requirements for employers concerning drug testing. 730.5(3) categorizes instances in which an employer may require testing and what is required if test results are positive. It also sets forth testing obligations and the requirement for evaluation and treatment and the results if treatment is successfully completed. Subsection 4 refers to the type of drugs for which testing may be required. Subsection 5 states:

This section does not restrict an employer's ability to prohibit the use of alcohol or controlled substances during work hours or to discipline employees for being under the influence of alcohol or controlled substances during work hours.

Pinkerton contends Wenco did not comply with section 730.5 when it did not again offer drug evaluation and treatment after the test-

---

1. This section has since been extensively revised. *See* 1998 Iowa Acts ch. 1011, §§ 1, 2. This controversy arose prior to its revision and is governed by the statute as it existed then.

ing on October 25, 1995, the only time he tested positive on an employer-requested drug screen. To subscribe to this view would effectively ignore Wenco's statutory right under Code section 730.5(5) to fire him for being under the influence of alcohol or controlled substances while on the job. It would also require us to punish, rather than reward, Wenco for its benevolent approach in helping Pinkerton face up to his frailties.

We have already spurned such a strange and unreasonable view of Code section 730.5. In *Reigelsberger*, we found that a blood test of an employee was not needed because the impairment was not disputed by either party. *Reigelsberger v. Employment Appeal Bd.*, 500 N.W.2d 64, 66 (Iowa 1993). The same is true here.

We conclude Wenco complied with Iowa Code section 730.5 by funding Pinkerton's first evaluation and treatment and by reserving his employment for him until he was finished with such treatment. The second occurrence on October 25, 1995, was not subject to the same protections. The trial court was correct in so holding.

**AFFIRMED.**