# IN THE SUPREME COURT OF IOWA

No. 07–1468

Filed January 9, 2009

**JERRIE LAVERNE SIMS,**

   Appellant,

vs.

**NCI HOLDING CORPORATION, et al.,**

   Appellee.

Appeal from the Iowa District Court for Mahaska County, Dan F. Morrison, Judge.

Employee appeals from decision denying a claim against his employer for violation of a statute authorizing random drug tests. **AFFIRMED.**

Steven Gardner of Kiple, Denefe, Beaver, Gardner & Zingg, L.L.P., Ottumwa, for appellant.

Sean M. Becker of Vinson & Elkins, L.L.P., Houston, Texas, and Gene R. La Suer of Davis, Brown, Koehn, Shors & Roberts, P.C., Des Moines, for appellee.

**HECHT, Justice.**

An employee was discharged from employment after his urine sample tested positive for an illegal drug. The employer provided the employee with oral notice of his right to a confirmatory retest of the sample. The employee subsequently filed this action alleging the employer violated Iowa's "drug-free workplaces" statute by failing to give written notice of his right to request a confirmatory test. The district court found the employer substantially complied with the statute by providing written notice six months after the termination, but entered judgment in the employee's favor for attorney fees and costs. Although we reject the district court's finding of substantial compliance with the statutory written notice requirement, we nonetheless agree with and therefore affirm that court's denial of legal and equitable relief for wrongful discharge under the circumstances of this case. As the employer failed to substantially comply with the notice requirement, however, we affirm the judgment against the employer for attorney fees and costs.

## I. Factual and Procedural Background.

Jerrie Sims worked as an Operator at the American Building Components manufacturing facility in Oskaloosa between July 2005 and March of 2006. American Building Components is a division of the NCI Holding Corporation. Sims's position required him to oversee the operation of steel decoiling machines, program the computers controlling them, and operate a forklift in transporting bundles of steel weighing approximately 10,000 pounds. The district court found Sims was employed in a "safety sensitive position." *See* Iowa Code § 730.5(1)(*j*) (2005) (defining a "safety sensitive position" as "a job wherein an accident

could cause loss of human life, serious bodily injury, or significant property or environmental damage . . .").

When Sims was hired by American Building Components, he was provided with and acknowledged receipt of the company's employee manual. The manual contained NCI's "Drugs, Narcotics, and Alcohol" policy prohibiting employees from being present on company property while under the influence of alcohol or illegal drugs. The policy informed employees that the company would randomly administer drug tests, and that a positive test result would subject an employee to an array of potential sanctions including immediate termination.

Sims was randomly selected for a drug test administered for NCI by Houston Medical Testing Services, a professional third-party administrator. He was taken to a medical center where a sample of his urine was collected for drug screening on February 22, 2006. The sample was sent by courier to Medtox Laboratories for screening. The collection and testing of the specimen were entirely consistent with the requirements prescribed in Iowa Code section 730.5.

Sims's sample tested positive for amphetamines and methamphetamine, a result which was confirmed by gas chromatography with mass spectrometry. Medtox Laboratories sent the test results to Houston Medical Testing Services where they were reviewed by Dr. Jeffrey Britton. Dr. Britton, a certified medical review officer, concluded Sims was likely under the influence of illegal methamphetamine at the time of the test. Dr. Britton then contacted Sims and allowed him an opportunity to explain the positive test result. Sims reported he had visited a dentist on the day before the test, but Dr. Britton opined this history was unlikely to have produced a positive test result.

Dr. Britton reported the positive test result to Nancy Pitcock, a representative in NCI's human resources department. Pitcock informed Sims's supervisor of the positive test results on March 16, 2006, and instructed the supervisor to inform Sims. When Sims contacted Pitcock later that day, she again informed Sims of the positive test results and orally informed him of his right to undertake a confirmatory test at his own expense.[1] Sims rejected the prospect of a confirmatory test, claiming he did not have adequate financial resources to pay for such a test. NCI terminated Sims's employment on March 16, 2006.

Sims filed suit against NCI on April 13, 2006, claiming the company violated Iowa Code section 730.5 by failing to notify him in writing by certified mail, return receipt requested, of (1) the results of the test, (2) his right to request and obtain a confirmatory test at an approved laboratory of his choice, and (3) the fee payable by him for a confirmatory test. Sims also claimed NCI's "Drug, Alcohol, and Narcotics" policy failed to make disclosures required by Iowa Code section 730.5(9)(*a*)(1). Sims sought a declaration that NCI violated section 730.5, injunctive relief, compensatory damages including back pay, punitive damages, and an award of attorney fees.

NCI sent Sims's attorney a letter by certified mail, return receipt requested, on August 18, 2006 informing Sims of his right to a confirmatory test. The letter also advised Sims of NCI's unconditional offer to pay for such a test. Sims accepted NCI's offer and requested the test be conducted by Laboratory Corporation of America. This test confirmed the previous positive test results.

---

[1]Consistent with Iowa Code section 730.5(7), the original sample collected from Sims on February 22, 2006 had been divided into two components so as to preserve a "sufficient quantity to permit a second, independent confirmatory test . . . ." *See* Iowa Code § 730.5(7)(*b*).

The parties submitted the case to the district court on stipulated facts. In its ruling on the merits, the court observed "it is unclear from the statute whether a six-month delay in providing notice is compliance." Noting "common sense would tell one that notice should be sent to the employee within a few days of the employer obtaining the results of the test," the court nonetheless found the delay caused Sims no direct damage. The court concluded NCI's written drug policy was noncompliant with Iowa Code section 730.5(9) because it failed to disclose Sims's right to request and obtain a confirmatory test. However, because NCI ultimately provided Sims the opportunity for a retest which confirmed the previous positive result, the district court found "NCI substantially complied with the statute by what they did, not by what their policy said or did not say." Despite NCI's delay in giving written notice of Sims's right to retest, the court found Sims was orally advised of this right on March 16, 2006 and later advised in writing as well.

The district court did not award Sims back pay or reinstatement as he was found to have suffered no direct harm as a result of his termination. The court did, however, order NCI to pay Sims's attorney fees and the costs of the action because Sims brought the action "as a direct result of NCI's failure to comply with the plain language of [section 730.5]." *See* Iowa Code § 730.5(15)(*a*) (authorizing the court to impose "any other equitable relief as the court deems appropriate including attorney fees and court costs").

Sims appeals, contending the district court erred in (1) finding NCI substantially complied with Iowa Code section 730.5, and (2) failing to grant the requested legal and equitable relief for wrongful termination. NCI cross-appeals, challenging the court's ruling ordering NCI to pay Sims's attorney fees and the court costs.

## II. Scope of Review.

We review the district court's legal conclusions for correction of errors at law and affirm its findings of fact if they are supported by substantial evidence. Iowa Rs. App. P. 6.4, 6.14(6)(*a*); *Tow v. Truck Country of Iowa*, 695 N.W.2d 36, 38 (Iowa 2005). Evidence is substantial if a reasonable mind would accept the evidence as adequate to reach the same findings. *Frontier Props. Corp. v. Swanberg*, 488 N.W.2d 146, 147 (Iowa 1992).

## III. Discussion.

**A. Substantial Compliance.** We have not previously determined whether strict compliance with the notice provisions of section 730.5, the "drug-free workplaces" statute, is required or whether substantial compliance will suffice. *See Harrison v. Employment Appeal Bd.*, 659 N.W.2d 581, 586 (Iowa 2003); *see also Munn v. Kraft Foods Global, Inc.*, 455 F. Supp. 2d 925, 933 (S.D. Iowa 2006) (noting the decision in *Harrison* did not resolve the question of whether strict or substantial compliance was required).

"Substantial compliance is said to be compliance in respect to essential matters necessary to assure the reasonable objectives of the statute." *Superior/Ideal, Inc. v. Bd. of Review*, 419 N.W.2d 405, 407 (Iowa 1988). In the broadest sense, section 730.5 is intended to protect an employer's right to ensure a drug-free workplace. *Anderson v. Warren Distrib. Co.*, 469 N.W.2d 687, 689 (Iowa 1991) (noting employers should be allowed to take steps to ensure a drug-free workplace). Viewed more narrowly, the legislature's intent was to "ensure the accuracy of any drug test serving as the basis for adverse employment action." *Harrison*, 659 N.W.2d at 586–87. Accurate drug testing inures, of course, to the benefit of both employers and their employees. *Id.* at 587.

The notice requirement within the statute focuses more directly, however, on the protection of employees who are required to submit to drug testing. *Id.* Section 730.5(7)(*i*)(1) accomplishes this protective purpose by mandating written notice by certified mail of (1) any positive drug test, (2) the employee's right to obtain a confirmatory test, and (3) the fee payable by the employee to the employer for reimbursement of the expense of the test. Iowa Code § 730.5(7)(*i*)(1). Such a formal notice conveys to the addressee "a message that the contents of the document are important" and worthy of the employee's deliberate reflection. *Harrison,* 659 N.W.2d at 587. We now decide that if the employer's actions fall short of strict compliance, but nonetheless accomplish the important objective of providing notice to the employee of the positive test result and a meaningful opportunity to consider whether to undertake a confirmatory test, the employer's conduct will substantially comply with the statute.

**B. Did NCI Substantially Comply?** Having concluded substantial compliance with the notice provisions of Iowa Code section 730.5 may suffice, we next consider whether NCI's actions constitute substantial compliance. The statute creates guidelines permitting an employer to conduct random drug tests pursuant to a written policy. *See* Iowa Code § 730.5. In conducting drug tests, "[a]n employer shall adhere to the requirements of [section 730.5] concerning the conduct of such testing and the use and disposition of the results of such testing." *Id.* § 730.5(4). While the statute permits an employer to conduct drug tests, it also mandates protections must be afforded to employees. *See id.* § 730.5(7). "Although an employer is entitled to have a drug free workplace, it would be contrary to the spirit of Iowa's drug testing law if

we were to allow employers to ignore the protections afforded by this statute . . . ." *Harrison*, 659 N.W.2d at 588.

In assessing whether NCI's actions substantially complied with the notice requirements, we address two parts of section 730.5: (1) section 730.5(9)(*a*)(1), the written policy provision, and (2) section 730.5(7)(*i*)(1), the written notice provision. We conclude NCI substantially complied with the written policy provision, but failed to substantially comply with the written notice provision.

1. *Written drug policy.* Section 730.5(9)(*a*)(1) mandates:

> Drug or alcohol testing or retesting *by an employer* shall be carried out within the terms of a written policy which has been provided to every employee subject to testing, and is available for review by employees and prospective employees.

Iowa Code § 730.5(9)(*a*)(1) (emphasis added). It is undisputed NCI had a "Drug, Narcotics, and Alcohol" policy that was published in a manual and provided to all employees. The manual provided in relevant part:

> If an employee tests positive on the initial test, the specimen will be sent for confirmation testing. The confirmation test (GC/MS) shall use a portion of the same test sample withdrawn from the employee or applicant for use in the first test. A Medical Review Officer (MRO) will review all confirmed positive test results, and will also review "chain of custody" handling for all specimens.

Sims received the manual and acknowledged in writing that he read the provisions detailing the company's internal policies pertaining to random drug testing and the consequences of a positive test result. The policy did not, however, notify employees of their right to request and obtain a confirmatory test.

Sims contends the written policy failed to comply with Iowa Code section 730.5(9)(*a*)(1) because it failed to notify him of his right to insist upon a confirmatory test. The district court agreed and found NCI's

written policy did not comply with section 730.5(9), but nonetheless found NCI's delayed offer of a confirmatory retest amounted to substantial compliance. Upon our review of the applicable statute and the record in this case, we conclude NCI's written policy did comply with section 730.5(9)(*a*)(1).

Sims correctly asserts NCI's written policy makes no disclosure of his statutory right to undertake a confirmatory test. However, we find nothing in section 730.5(9)(*a*)(1) requiring the written policy to make such a disclosure. The express language of the statute mandates the policy disclose "drug or alcohol testing or retesting *by an employer.*" Iowa Code § 730.5(9)(*a*)(1) (emphasis added). It does not require the policy to address testing or retesting requested *by an employee.* Although the legislature could have mandated disclosure of the *employee's* right to a retest in the employer's written policy, it chose not to do so. It chose instead to require such a disclosure *after* a positive drug test in the written notice sent to the employee as required by section 730.5(7)(*i*)(1) when that information is most urgently needed by, and useful to, the employee. We will not read into the statute a mandate which is not present in the plain language. *See Eaton v. Iowa Employment Appeal Bd.*, 602 N.W.2d 553, 556 (Iowa 1999) (noting we focus on what the legislature said in the statute); *Anderson*, 469 N.W.2d at 688 (stating we will not mandate a requirement which is not present in the statute).

Sims does not deny he was provided a copy of NCI's written drug policy. Indeed, he signed a form acknowledging he had received and was aware of the policy. NCI's written drug testing policy provided ample information regarding the company's random testing policy and the

procedures of its implementation. We conclude NCI's written policy complied with the mandates of section 730.5(9)(*a*)(1).

    2. *Written notice of positive test result.* Section 730.5(7)(*i*)(1) states:

> If a confirmed positive test result for drugs . . . for a current employee is reported to the employer . . . , the employer shall notify the employee in writing by certified mail, return receipt requested, of the results of the test, the employee's right to request and obtain a confirmatory test of the second sample . . . and the fee payable by the employee to the employer for reimbursement of expenses concerning the test.

Iowa Code § 730.5(7)(*i*)(1). Although the district court aptly noted "common sense would tell one that notice should be sent to the employee within a few days of the employer obtaining the results of the test," the statute provides no specific timeline within which notice must be provided to the employee. *See id.* In this case, NCI provided Sims with prompt *oral notice* of his right to a confirmatory test, but delayed giving *written notice* of this right until five months after Sims's employment was terminated.

    We conclude the *oral notice* provided by NCI at the time of Sims's termination was insufficient to convey to Sims all of the employee protections afforded by section 730.5(7). Standing alone it did not constitute substantial compliance. Although it informed Sims of his right to undertake a confirmatory test, the *oral notice* was incomplete and failed to adequately convey the message that the notice was important. *See Harrison*, 659 N.W.2d at 587 (noting a written notice sent by certified mail conveys the importance of the message and the need for deliberate reflection). Moreover, the oral notice did not serve to adequately protect Sims from the consequences of a potentially erroneous test result.

    We further conclude NCI did not come into substantial compliance with its statutory obligation under section 730.5(7) when it sent written

notice to Sims several months after he was discharged. This long-delayed notice was not given until after Sims filed suit alleging noncompliance with the statute. Under these circumstances, we cannot conclude NCI's compliance was substantial.

**C. Legal and Equitable Relief.** Upon receipt of the positive test result evidencing Sims's violation of the written drug policy, NCI was authorized to terminate Sims's employment. Iowa Code § 730.5(10)(*a*)(3). As the confirmatory retest eventually requested by Sims confirmed the initial positive result, Sims's employment was not adversely affected by an erroneous test result. Accordingly, we affirm the district court's determination that Sims is not entitled to back pay, punitive damages, or reinstatement of his employment.

**D. NCI's Cross-Appeal.** NCI's cross-appeal challenges the judgment against it for attorney fees and court costs. Claiming it complied with the statutory notice requirements, and emphasizing the confirmatory test conclusively established Sims's termination was justified, NCI asserts it can have no liability whatsoever under section 730.5. As we have already rejected NCI's claim of substantial compliance with the notice requirement, we next consider whether the employer may be held liable for a discharged employee's attorney fees and the court costs under the circumstances presented here.

The district court is authorized to grant "affirmative relief including reinstatement or hiring, with or without back pay, or any other equitable relief as the court deems appropriate including attorney fees and court costs" against an employer who fails to comply with section 730.5. *Id.* § 730.5(15). Although NCI did, eventually, provide written notice, it had not yet done so when Sims filed this action. Because NCI's delay in compliance with the notice requirements of section 730.5(7)(*i*)(1)

provoked Sims's suit to enforce compliance, we conclude the district court properly invoked its authority under section 730.5(15) to award attorney fees and court costs. We therefore affirm the award of attorney fees and court costs against NCI.

### IV.  Conclusion.

NCI's written drug policy complied with the requirements of section 730.5(9)(*a*)(1). The district court erred in finding NCI substantially complied with Iowa Code section 730.5(7)(*i*)(1) by providing Sims with written notice of his statutory right to request a confirmatory test several months after he was discharged, and after he filed suit to enforce his rights under the statute. The district court correctly concluded, however, that Sims is not entitled to damages or reinstatement for wrongful termination of his employment. NCI was authorized to discharge Sims under the statute upon receipt of the positive drug test, and the test later requested by Sims only confirmed his violation of NCI's anti-drug policy. The district court nonetheless properly exercised its authority under the circumstances of this case to order NCI to reimburse Sims for attorney fees and costs incurred in litigation commenced as a consequence of NCI's failure to substantially comply with the notice requirement. Thus, although our rationale differs from that of the district court, we reach the same result, and therefore affirm.

**AFFIRMED.**