# IN THE COURT OF APPEALS OF IOWA

No. 19-0002
Filed January 9, 2020

**LUCAS WOODS,**
    Plaintiff-Appellant,

**vs.**

**CHARLES GABUS FORD, INC.,**
    Defendant-Appellee.

_____

Appeal from the Iowa District Court for Polk County, Jeanie K. Vaudt, Judge.


Lucas Woods appeals the district court's order dismissing his petition asserting his employment was wrongfully terminated because his former employer violated Iowa's private sector employee drug-and-alcohol-testing statute, Iowa Code section 730.5 (2017). **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**


Harley C. Erbe of Erbe Law Firm, Des Moines, for appellant.

James R. Hinchliff and Steven H. Shindler of Shindler, Anderson, Goplerud & Weese, P.C., West Des Moines, for appellee.


Heard by Doyle, P.J., and Tabor and Schumacher, JJ.

**DOYLE, Presiding Judge.**

Charles Gabus Ford, Inc. (Gabus Ford) fired Lucas Woods after he failed an employee drug test. Woods filed a petition at law asserting he was wrongfully terminated because Gabus Ford violated Iowa Code section 730.5 (2017)—Iowa's private sector employee drug-and-alcohol-testing statute. After a bench trial, the district court dismissed Woods's petition.

Woods appeals, challenging the district court's ruling in three respects. He asserts Gabus Ford violated section 730.5 because it did not: (1) send its certified mailing of the post-test notice return receipt requested as required in subsection (7)(j)(1); (2) establish it complied with the supervisory personnel training described in subsection (9)(h); and (3) include in its notice to Woods the cost of a confirmatory drug test as required in subsection (7)(j)(1). Upon our review of the record, we find no reversible error in Woods's first two claims. But we agree Gabus Ford's failure to include the cost of the confirmatory drug test in its post-test notice to Woods violated the statute. So we reverse and remand for further proceedings.

### I. Standard of Review.

The parties agree our review is for correction of errors at law. *See* Iowa R. App. P. 6.907; *Sims v. NCI Holding Corp.*, 759 N.W.2d 333, 337 (Iowa 2009). We will affirm the district court's findings of fact if they are supported by substantial evidence. Iowa R. App. P. 6.904(3)(a). "Evidence is substantial if a reasonable mind would accept the evidence as adequate to reach the same findings." *Sims*, 759 N.W.2d at 337.

### II. Relevant Law.

Iowa's private sector employee drug-and-alcohol-testing statute, section 730.5, was enacted "in response to a widespread belief that employers have the right to expect a drug-free work place and should be able to require employees to take steps to insure it." *Anderson v. Warren Distrib. Co.*, 469 N.W.2d 687, 689 (Iowa 1991). The statute allows private sector employers to take disciplinary action against employees who test positive or refuse to test, including termination of their employment. Iowa Code § 730.5(10)(a)(3).

> Although the legislature now allows random workplace drug testing, it does so under severely circumscribed conditions designed to ensure accurate testing and to protect employees from unfair and unwarranted discipline. The importance of these protections, including the procedural safeguards contained in section 730.5(7), is highlighted by the statutory provision making an employer "who violates this section . . . liable to an aggrieved employee . . . for affirmative relief including reinstatement . . . or any other equitable relief as the court deems appropriate." Iowa Code § 730.5(15). Although an employer is entitled to have a drug free workplace, it would be contrary to the spirit of Iowa's drug testing law if we were to allow employers to ignore the protections afforded by this statute, yet gain the advantage of using a test that did not comport with the law to support a denial of unemployment compensation.

*Harrison v. Emp't Appeal Bd*., 659 N.W.2d 581, 588 (Iowa 2003).[1] An employer's failure to comply with those detailed statutory protections in section 730.5 "create[s] a cause of action in favor of one who has been injured by [the employer's] failure." *McVey v. Nat'l Org. Serv., Inc.*, 719 N.W.2d 801, 803 (Iowa 2006). As a result, a private employee can be discharged from employment

---

[1] For a discussion of the statute's "byzantine provisions," see *Dix v. Casey's General Stores* also filed today. *Dix v. Casey's General Stores, Inc.*, No. 18-1464, 2020 WL _____, at *_ (Iowa Ct. App. Jan. 9, 2020).

"based on an employee drug-testing program only if that program is being carried out in compliance with the governing statutory law." *Id.*

Section 730.5 was enacted in 1987 and has been substantively amended over the years. *See* 1987 Iowa Acts ch. 208, § 1 (adding section 730.5); *see also* 1998 Iowa Acts ch. 1011, § 1 (amending section 730.5 to a similar version of 2017's section 730.5). Since its enactment, the Iowa Supreme Court has considered the section many times. *See, e.g.*, *Ferguson v. Exide Techs., Inc.*, ___ N.W.2d ___, ___, 2019 WL 6794312, at *1 (Iowa 2019) (holding a common law wrongful-discharge claim is unavailable to a person who already has a statutory remedy under section 730.5 for the same conduct); *Sims*, 759 N.W.2d at 337 (holding an employer's strict compliance with section 730.5 was not required where the employer substantially complied with the statute, and holding an employee was "not entitled to back pay, punitive damages, or reinstatement of his employment" even though the employer did not substantially comply with the statute's notice requirement because the employee's employment was not adversely affected by an erroneous test result); *McVey v. Nat'l Org. Serv., Inc.*, 719 N.W.2d 801, 803 (Iowa 2006) (finding summary judgment improper because a fact issue remained about whether an employee received copy of employee drug-testing policy as required by section 730.5); *Tow v. Truck Country of Iowa, Inc.*, 695 N.W.2d 36, 39 (Iowa 2005) (affirming district court's determination in summary judgment ruling that employer violated section 730.5, on which civil remedies could be predicated); *Harrison*, 659 N.W.2d at 588 (holding employee's positive drug test results could not be used against him in unemployment proceedings where the employer failed to substantially comply with section 730.5's requirements that the employer give

the employee written notice of positive test result by certified mail and inform employee of his right to have second confirmatory test done); *Pinkerton v. Jeld-Wen, Inc.*, 588 N.W.2d 679, 681-82 (Iowa 1998) (concluding employer complied with section 730.5 under odd facts of the case); *Bhd. of Maint. of Way Emps. v. Chicago & N. W. Transp. Co.*, 514 N.W.2d 90, 93 (Iowa 1994) (finding federal law preempts section 730.5 claims by railway employees and union); *Reigelsberger v. Emp't Appeal Bd.*, 500 N.W.2d 64, 66 (Iowa 1993) (finding employer substantially complied with section 730.5 under the case's "special circumstances" even though employee fired for refusing to undergo treatment for alcoholism was never subjected to the blood test then "specified in Iowa Code section 730.5(3)"); *Anderson*, 469 N.W.2d at 689 (finding notice sent to employee about a drug screen was adequate under section 730.5 and supported denial of unemployment benefits); *Waechter v. Aluminum Co. of Am.*, 454 N.W.2d 565, 567 (Iowa 1990) (holding settlement between employee and employer was intended to cover and bar employee's section 730.5 claim).

One reoccurring question has concerned the statute's use of the words "must" and "shall," which traditionally impose a duty or state a requirement. *See, e.g.*, *Harrison*, 659 N.W.2d at 585 (discussing strict versus substantial compliance under section 730.5 and noting the definitions of "must" and "shall" defined in Iowa Code section 4.1(30)). Despite the legislature's use of "shall" and "must," the court has concluded *substantial* compliance with the notice provisions of section 730.5 may suffice if the employer's actions falling "short of strict compliance . . . *nonetheless accomplish the important objective* of providing notice to the employee of the positive test result *and a meaningful opportunity to consider*

whether to undertake a confirmatory test." *Sims*, 759 N.W.2d at 338 (emphasis added); *see also Harrison*, 659 N.W.2d at 585.

### III. Discussion.

### A. "Return Receipt Requested."

The notice requirement set out in section 730.5(7)(j)(1) states:

> If a confirmed positive test result for drugs . . . for a current employee is reported to the employer . . ., the employer shall notify the employee in writing by certified mail, *return receipt requested*, of the results of the test, the employee's right to request and obtain a confirmatory test of the second sample . . . .

(Emphasis added.) There is no dispute that Woods received the section 730.5(7)(j)(1) notice of his positive-test results from Gabus Ford. But it appears from the record that the notice was not sent "return receipt requested" as required by section 730.5(7)(j)(1). According to Gabus Ford, the notice was sent by certified mail with tracking, and in evidence is a United State Postal Service Tracking printout showing delivery information for an item with a particular tracking number. Woods argues this did not meet the substantial-compliance threshold:

> [T]he return receipt requirement is for the employee's benefit, not the employer's, as the district court suggested. It is inaccurate to say that substantial compliance exists as long as the employer has proof that the employee received the post-test notice. This is not an issue of tracking for the employer; it is an issue of alerting the employee to a serious situation.

In considering the mailing requirements of a section 730.5(7)(j)(1) notice, our supreme court has stated:

> It is important to consider how these requirements serve to protect the employee. A written document, particularly one sent by certified mail, conveys a message that the contents of the document are important. Thus, an employee receiving notice in this fashion would be more likely to consider his decision with respect to a second test to be an important one. Likewise, he would more deliberately reflect

on his options and the ramifications of his decision. The seven-day period given to the employee allows adequate time for the employee to make a thoughtful choice.

*Harrison*, 659 N.W.2d at 587.

It is the fact that the notice was sent by certified mail that gave the notice the requisite cachet of importance. Woods was indeed alerted to a serious situation. A return receipt request would add nothing more. We therefore find no error with the district court's conclusion Gabus Ford substantially complied with the mailing requirement of section 730.5(7)(j)(1). To stave off potential litigation, the better practice would be to follow the letter of the statute.

### B. Supervisory Personnel Training.

Section 730.5(9)(h) instructs that the employer "*shall* require supervisory personnel of the employer involved with drug or alcohol testing . . . to attend a minimum of two hours of initial training and to attend, on an annual basis thereafter, a minimum of one hour of subsequent training." (Emphasis added.) Woods is correct that the statute mandates that an employer's personnel receive training about drug testing. He also accurately states paragraph (15)(b) places "the burden of proving that the requirements of [section 730.5] were met" on the employer. But nothing in section 730.5 places an affirmative burden upon an employer to defend non-existent claims of wrong doing. The training claim was not raised in Woods's petition. The claim was not raised in Woods's trial brief. The claim was not raised during trial. Without a specific claim that Gabus Ford did not provide the requisite section 730.5 training, Gabus Ford was not on notice it needed to prove it provided

training as required in section 730.5(9)(h).[2]  The issue did not come to first light until after trial when Woods filed his proposed findings of facts and conclusions of law.  Not surprisingly, the district court did not address the claim in its initial ruling because it was not presented or litigated at trial.  Woods then filed an Iowa Rule of Civil Procedure 1.904(2) motion and supporting brief asserting, in part, "the Court did not address the uncontested fact that the supervisory employee involved in Plaintiff's drug testing lacked the training that Iowa Code § 730.5(9)(h) requires." "It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002).  Under the specific circumstances presented here, we conclude Woods simply failed to preserve the training claim for appellate review.

### C.  Cost of Confirmatory Test.

The notice requirement set out in section 730.5(7)(j)(1) states:

> If a confirmed positive test result for drugs . . . for a current employee is reported to the employer . . ., the employer shall notify the employee in writing . . . of the results of the test, the employee's right to request and obtain a confirmatory test of the second sample . . . and *the fee payable* by the employee to the employer for reimbursement of expenses concerning the test.  The fee charged an employee shall be an amount that represents the costs associated with conducting the second confirmatory test, which shall be consistent with the employer's cost for conducting the initial confirmatory test on an employee's sample.

(Emphasis added.)

The remaining issue is whether Gabus Ford's failure to include the cost of a confirmatory test in the notice meant it did not substantially comply with section

---

[2] The record shows Gabus Ford was poised to defend the claim if necessary.

730.5. Gabus Ford conceded it "incidentally omitted the cost of the confirmatory test in the notice," but argued it substantially complied with the substantive notice requirements of section 730.5. The court determined the evidence established Gabus Ford substantially complied with the requirements even though it failed to include the cost of the test in the notice. We disagree.

The district court noted Woods "testified that if the notice had included the cost of the confirmatory test he 'might' have requested one," but that "explanation begs the question of why [Woods] would not request the test, regardless of its cost, to exonerate himself because it would ultimately cost him nothing to do so if the confirmatory test result was negative for drug use." That may be true, but it was Gabus Ford's burden to inform Woods of the cost. Even though Woods was alerted he would be reimbursed if the second test was negative for drug use, there is nothing to show the cost would be minimal. For an employee just fired, alerting the employee that he had to pay for a second test without stating the cost did not give Woods "a meaningful opportunity to consider whether to undertake a confirmatory test." *Sims*, 759 N.W.2d at 338. We do not find Gabus Ford's notice "substantially complied with section 730.5(7)(i) and assured the reasonable objectives of the statute," as concluded by the district court. Without knowing the cost of the test, Woods could not make an informed decision. We find the district court erred in so concluding.

Our reversal does create an interesting dilemma on the correct remedy in the case. The civil remedies subsection of the statute states:

a. This section may be enforced through a civil action.
    (1) A person who violates this section or who aids in the violation of this section is liable to an aggrieved employee or

prospective employee for affirmative relief including reinstatement or hiring, with or without back pay, or any other equitable relief as the court deems appropriate including attorney fees and court costs.

Iowa Code § 730.5(15). The statute also provides for injunctive relief. *See id.* § 730.5(15)(a)(2). At trial, Woods did not request reinstatement. He requested $89,770 in back pay and $185,000 in front pay. He also requested attorney fees under section 730.5(15)(a)(1).

The laboratory was only required to "store the second portion of any sample until receipt of a confirmed negative test result or for a period of at least forty-five calendar days following the completion of the initial confirmatory testing, if the first portion yielded a confirmed positive test result." Iowa Code § 730.5(7)(b). That time has long passed. So we may never know what the results of a confirmatory test would be. And without that knowledge, the court is in no position to decide whether back pay or front pay is warranted. Even so, we have determined Gabus Ford violated the provisions of section 730.5. Gabus Ford is therefore liable to Woods. The district court may fashion equitable relief it deems appropriate under the circumstances, including attorney fees and costs. We therefore remand to the district court to determine the appropriate relief Woods is due from Gabus Ford.

### IV. Conclusion.

Because we agree with Woods that Gabus Ford's failure to include the cost of the confirmatory drug test in its notice as required by section 730.5 violated the statute, we reverse and remand the matter to the district court for further proceedings consistent with this opinion. We affirm in all other respects.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**