# In the Iowa Supreme Court

---

No. 22–1599

Submitted November 14, 2024—Filed April 11, 2025

---

**Scott Hampe,**

Appellant,

vs.

**Charles Gabus Motors, Inc.** d/b/a **Toyota of Des Moines** and **Gadimina Enterprises, Inc.** d/b/a **Mid-Iowa Occupational Testing,**

Appellees.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Joseph Seidlin, judge.

A fired employee seeks further review of a court of appeals decision that affirmed in part and reversed in part the dismissal of the employee's claims under Iowa Code section 730.5, which governs employer drug testing. **Decision of Court of Appeals Affirmed as Modified; District Court Judgment Affirmed in Part, Reversed in Part, and Case Remanded with Instructions.**

May, J., delivered the opinion of the court, in which McDonald, Oxley, and McDermott, JJ., joined. Mansfield, J., filed a dissenting opinion, in which Christensen, C.J., and Waterman, J., joined.

Gary Dickey (argued) and Matthew M. Sahag of Dickey, Campbell & Sahag Law Firm, PLC, Des Moines, for appellant.

Andrew Tice (argued) of Ahlers & Cooney, P.C., Des Moines, for appellee Charles Gabus Motors, Inc. d/b/a Toyota of Des Moines.

Margaret A. Hanson and Katelynn T. McCullough of Dentons Davis Brown P.C., Des Moines, for appellee Gadimina Enterprises, Inc. d/b/a Mid-Iowa Occupational Testing.

**May, Justice.**

Before 1998, Iowa law prohibited "random or blanket drug testing of employees" by private employers. Iowa Code § 730.5(2) (1997). It was not legal at all.

But that spring, the legislature revised Iowa Code section 730.5. 1998 Iowa Acts ch. 1011 (codified at Iowa Code § 730.5 (1999)); *see also Dix v. Casey's Gen. Stores, Inc.*, 961 N.W.2d 671, 681 (Iowa 2021) (discussing the statutory history). The revised law permits some random testing. *See* Iowa Code § 730.5 (2019). But narrow is the gate: Employers who choose to conduct random tests must comply with a "comprehensive" set of requirements. *Dix*, 961 N.W.2d at 681. Employers who fail to substantially comply with those requirements can be liable to "an aggrieved employee." Iowa Code § 730.5(15)(*a*)(1).

Here we consider an employee's claim that his employer violated section 730.5's requirements for composition of testing pools. We conclude that the employer failed to substantially comply with those requirements. And we conclude that the employee was aggrieved by the employer's failure. So we conclude that the district court erred in dismissing the employee's claim. We remand for further proceedings consistent with this opinion.

### I. Background.

From 2008 until December 2019, Scott Hampe was employed by Charles Gabus Motors, Inc. (Gabus), a car dealership. Hampe received and acknowledged Gabus's drug testing policies. He understood that violations of those policies could lead to discipline including termination.

Since 2016, Kelsey Gabus-McBride (McBride) has served as Gabus's director of human resources. She oversaw Gabus's drug testing policies.

On December 5, 2019, Gabus conducted an unannounced drug test of some employees. Gabus was assisted by an independent drug testing service provider, Mid-Iowa Occupational Testing (Mid-Iowa).

The process went this way: At some point prior to December 5, Gabus provided Mid-Iowa with a master list of its employees. At that time, Gabus had approximately 165 employees. With some exceptions that are not relevant here, all of Gabus's employees were on the master list. For reasons that will be explained, we sometimes refer to this master list as the "testing pool" or "pool."

As the December 5 test date approached, McBride asked Mid-Iowa to provide a list of employees to be tested. McBride wanted to test a total of fifteen employees. So Mid-Iowa ran Gabus's master list—its pool—through a computer-based random number generator. The generator produced a list of twenty-three names: fifteen employees for testing plus eight alternates.

On November 27, Mid-Iowa sent that list to Gabus. Hampe's name appeared as the eighth alternate, that is, the last name on the list.

On the morning of December 5, McBride asked department managers to gather the employees named on the list. They started at the top of the list and worked their way down. If an employee was on the list but was not physically present, they skipped over that employee and moved to the next name. Ultimately, six of the initial fifteen employees were subjected to testing. So were seven of the alternates, including Hampe.

Hampe was scheduled to work that day. He had arrived as scheduled at 9:00 a.m. Soon after, Hampe's manager called him about the drug test. Hampe reported to the designated testing area, which was near the dealership's lunchroom. Hampe saw other employees waiting. Hampe took a seat and waited his turn.

Mid-Iowa employee Sarah Ghee was present to assist with sample collection. When Ghee was ready for Hampe to test, she handed him a cup and accompanied him into the bathroom that was being used as the collection site. Hampe went into the toilet stall. Ghee stood on the other side of the toilet stall wall.

Hampe provided a filled sample cup to Ghee. Ghee measured it with a laser thermometer. Hampe recalls the thermometer reporting 101 degrees. Ghee reminded Hampe that the sample had to be between 90–100 degrees. Ghee dumped out the urine.

Hampe was asked to drink water and then provide an additional sample. He did so. This time, Ghee observed that there wasn't enough urine for testing. Ghee discarded the urine.

Hampe returned to the waiting area. After about twenty minutes, Hampe decided to leave. Before he left, Hampe talked to McBride, who was in the testing area. Hampe told McBride that he was leaving to take care of his sick child. In response, McBride said, "You know, if you leave, you're going to get fired." Hampe responded, "You would really do that to me?" McBride replied, "Yeah."

Hampe waited another fifteen minutes. Hampe then walked over to McBride and said: "Yeah, I'm going to leave." McBride responded, "No. If you leave, you're fired." Hampe replied, "This is the hardest decision I've had to make. I shouldn't even be up here anyhow because my name's not on the list." Then Hampe left. He was later fired.

In May 2020, Hampe filed this lawsuit against Gabus and Mid-Iowa. Hampe alleged violations of Iowa Code section 730.5. He also asserted common law claims.

Gabus and Mid-Iowa filed motions for summary judgment. Hampe resisted and filed his own motion for partial summary judgment as to liability on his statutory claims.

The district court denied Hampe's motion, granted Gabus's and Mid-Iowa's motions, and dismissed all of Hampe's claims. Hampe then filed this appeal. In his appellate brief, Hampe argued that the district court should not have dismissed his claims. Hampe also argued that the district court should have granted summary judgment in his favor concerning his statutory claims. Gabus and Mid-Iowa filed responsive briefs.

We transferred the case to the court of appeals. The court of appeals affirmed the dismissal of all of Hampe's claims against Mid-Iowa and most of Hampe's claims against Gabus. But the court of appeals reversed as to Hampe's claims that Gabus violated section 730.5's testing pool requirements (section 730.5(8)(*a*)), supervisor training requirements (section 730.5(9)(*h*)), and uniform disciplinary policy requirements (section 730.5(9)(*b*)). As to those claims, the court of appeals found that genuine issues of material fact preclude summary judgment. Gabus then sought further review, which we granted.

**II. Scope of Review.**

When our court grants further review, we have discretion as to which issues we will consider. *State v. Jackson*, 4 N.W.3d 298, 306 (Iowa 2024). In this case, we confine our analysis to Hampe's claim that Gabus violated section 730.5's testing pool requirements.

**III. Standard of Review.**

We review summary judgment rulings for correction of legal errors. Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Iowa R. Civ.

P. 1.981(3). We view the record in the light most favorable to the nonmoving party. And we draw every reasonable inference in favor of the nonmoving party.

**IV. Analysis.**

**A. Overview.** Iowa Code section 730.5 governs drug testing by private employers. Section 730.5 permits random drug tests only under "severely circumscribed conditions." *Harrison v. Emp. Appeal Bd.*, 659 N.W.2d 581, 588 (Iowa 2003).

Even so, we have held that section 730.5 requires only substantial compliance, not strict compliance. *Dix*, 961 N.W.2d at 681–82. "Substantial compliance is said to be compliance in respect to essential matters necessary to assure the reasonable objectives of the statute." *Id.* at 682 (quoting *Sims v. NCI Holding Corp.*, 759 N.W.2d 333, 338 (Iowa 2009)). Thus, "if the employer's actions fall short of strict compliance, but nonetheless accomplish the important objective[s]" expressed in the statutory text, "the employer's conduct will substantially comply with the statute." *Id.* (alteration in original) (quoting *Sims*, 759 N.W.2d at 338).

Moreover, even when an employer falls below the substantial compliance threshold, this does not mean that every employee is entitled to relief. *Id.* at 692. Rather, only "an *aggrieved* employee" is entitled to relief. *Id.* (quoting Iowa Code § 730.5(15)(*a*)(1)).

It bears adding that a special burden-of-proof system applies where, as here, an employee alleges that "an employer has required or requested a drug or alcohol test in violation of" section 730.5. Iowa Code § 730.5(15)(*b*). In these cases, "*the employer* has the burden of proving that the requirements of" section 730.5 "were met." *Id.* (emphasis added). But the employee has the burden of showing aggrievement. *See Dix*, 961 N.W.2d at 692, 694.

**B. The Pooling Claim.** With this framework in mind, we now address Hampe's claim that Gabus violated section 730.5's requirements for the composition of the pool from which employees may be selected for testing.

Section 730.5(8)(*a*) permits unannounced drug testing of employees "who are selected from any of" three designated "pools of employees." Iowa Code § 730.5(8)(*a*). One of these pools is described in subsection (8)(*a*)(1) as follows:

> The entire employee population at a particular work site of the employer except for employees not subject to testing pursuant to a collective bargaining agreement, or employees who are not scheduled to be at work at the time the testing is conducted because of the status of the employees or who have been excused from work pursuant to the employer's work policy prior to the time the testing is announced to employees.

*Id.*

The question here is whether Gabus used a pool of employees that met subsection (8)(*a*)(1)'s requirements. The answer is no. The pool used in the December testing consisted of all of Gabus's active employees. The pool did not exclude those employees who "[were] not scheduled to be at work at the time the testing is conducted because of the status of the employees or who have been excused from work pursuant to the employer's work policy." *Id.* Nor did the pool exclude the other categories of employees who were required to be excluded under subsection (8)(*a*)(1). *See id.*

So it is clear that Gabus failed to strictly comply with subsection (8)(*a*)(1)'s pooling requirements. As mentioned, though, we have not required strict compliance with section 730.5. *Substantial* compliance is enough.

But we cannot find substantial compliance here. As *Dix v. Casey's General Stores, Inc.* teaches, substantial compliance requires reasonable efforts to ensure that the pool is formed in the way that the legislature has commanded. 961 N.W.2d at 689–91 (concluding that the employer substantially complied with the

requirement that the pool consist of "[a]ll employees . . . who are scheduled to be at work at the time testing is conducted" because the employer provided the testing agency with a mostly accurate list of the employees who were scheduled to work at the planned testing time, and holding that compliance was substantial despite some inaccuracies in the pool that were caused by schedule shifts, employee no-shows, and human error (alteration and omission in original) (quoting Iowa Code § 730.5(8)(*a*)(3))); *see also id.* at 691 n.3 (suggesting that substantial compliance might not be found if there were long periods of time, "particularly with no justification," between the employer's compilation of the pool and the time for testing or if there was evidence "that an employer compiled its list knowing that work schedules would change significantly before the time of testing").

Gabus did not make those efforts. It is undisputed that Gabus made no attempt to exclude "employees who [were] not scheduled to be at work" because of their work status or because they had been excused pursuant to a policy as required by subsection (8)(*a*)(1). Iowa Code § 730.5(8)(*a*)(1). So Gabus's pool did not substantially comply.

But Gabus says we should look beyond the pool composition and also consider *the testing itself*. As explained, Gabus skipped over—and, therefore, did not test—anyone whose name appeared on the to-be-tested list but who was not physically present at work. It follows, Gabus argues, that no "employees who [were] not scheduled to be at work" could have been actually tested. *Id.* This is substantial compliance, Gabus argues.

We disagree. The text of subsection (8)(*a*)(1) is clear. Compliance with subsection (8)(*a*)(1) does not turn on the physical presence or absence of employees at the time of testing. Instead, by its plain language, subsection

(8)(*a*)(1)'s requirements are focused only on the "pool" from which employees can be drawn. *Id.* Its plain purpose, then, is to limit the ways that those pools can be constructed. And so, as we said in *Dix*, substantial compliance requires efforts to properly construct the pool. 961 N.W.2d at 689–91. Because Gabus did not make those efforts, we can't find substantial compliance.

Remember also that under subsection (8)(*a*)(1), the pool must exclude those employees who are not scheduled to be at work due to their status or who have been excused from work pursuant to a policy. Iowa Code § 730.5(8)(*a*)(1). But Gabus included its entire employee population in the pool—and then, on the day of testing, Gabus excused *not only* those employees who should have been excluded through proper construction of the pool *but also* those who simply were not physically present at the time of testing, even if those employees *were scheduled* to be at work but were simply away from the worksite at the time. An improperly constructed pool cannot be made substantially compliant by merely skipping selected employees who should have been excluded altogether. But even if it could, Gabus's further action of skipping employees who *were* properly part of the pool but who happened to be physically absent is plainly inconsistent with the statutory testing requirements.

Gabus also complains that the fluid circumstances of "today's workplace" make compliance too difficult. This concern might be better directed to the legislature. In any event, we see no evidence that it would have been impractical (or even inconvenient) for Gabus to comply with subsection (8)(*a*)(1). We see nothing that would have prevented Gabus from compiling a list of employees who were scheduled to work on the planned test day and then giving that properly designed list to Mid-Iowa for use as the testing pool. Indeed, in our modern computerized age, these seem like easy steps, especially for a workplace of only

165 employees. And even if the resulting pool hadn't been perfect—even if the fluidity of schedules had led to errors—at least Gabus's *effort* to create a statutorily required pool could have supported a finding of substantial compliance. *Cf. Dix*, 961 N.W.2d at 689–91. But again, the record shows no such effort here.

For all of these reasons, we conclude that Gabus did not substantially comply. As mentioned, though, even when an employer fails to substantially comply, that doesn't automatically mean that an employee is entitled to relief. Rather, an employee must first prove that he or she was "aggrieved" by the violation. Iowa Code § 730.5(15)(*a*)(1). "Determining whether an employee is aggrieved necessarily depends on the nature of the violation." *Dix*, 961 N.W.2d at 692.

In *Woods v. Charles Gabus Ford, Inc.*, we held that an employee was "aggrieved" by the employer's violation when his notice of termination for failing a drug test did not include information about the cost of a retest. 962 N.W.2d 1, 8 (Iowa 2021). Although the employee testified that he might not have done a retest—and although the retest might not have exonerated him—the record was enough to show aggrievement. *Id.* We said that "[e]ven though Woods testified he might not have asked for a retest had he been informed of the cost of the test, he was aggrieved when he was prevented from making an informed decision, and there is no way to know what the outcome of the retest would have been." *Id.* Similarly, Hampe was aggrieved because (1) he was selected through a testing process that was based upon a pool that did not comply with section 730.5, (2) there is no way to know whether he would have been selected if the pool had complied with the statute, and (3) his employment was terminated because of a process that did not comply with the statute.

**C. Conclusion.** In short, based on the undisputed facts, we conclude that Gabus failed to substantially comply with Iowa Code section 730.5, and Hampe was aggrieved by that failure. So Hampe is entitled to summary judgment on his claim that Gabus violated section 730.5. We remand this matter for further proceedings to determine what relief should be awarded pursuant to section 730.5(15)(*a*)(1).

As to the other issues in this appeal, we allow the court of appeals opinion to stand. We note, however, that the court of appeals remand instructions anticipated further proceedings on Hampe's claims concerning supervisor training and uniform disciplinary policy. We conclude that those claims are now moot in light of our resolution of the pooling claim in Hampe's favor.

**V. Disposition.**

We reverse and remand for further proceedings.

**Decision of Court of Appeals Affirmed as Modified; District Court Judgment Affirmed in Part, Reversed in Part, and Case Remanded with Instructions.**

McDonald, Oxley, and McDermott, JJ., join this opinion. Mansfield, J., files a dissenting opinion, in which Christensen, C.J., and Waterman, J., join.

#22–1599, *Hampe v. Charles Gabus Motors, Inc.*

**Mansfield, Justice (dissenting).**

### I. Introduction.

I respectfully dissent. In my view, Charles Gabus Motors, Inc. (Gabus) substantially complied with the selection requirements in the drug-testing statute, Iowa Code section 730.5(8)(*a*) (2019).

The established definition of strict compliance in Iowa and under our drug-testing cases is whether the party complied "in respect to essential matters necessary to assure the reasonable objectives of the statute." *Puente v. Civ. Serv. Comm'n*, 7 N.W.3d 15, 19 (Iowa 2024) (quoting *Burnam v. Bd. of Rev.*, 501 N.W.2d 553, 554 (Iowa 1993) (per curiam)); *see also, e.g.*, *Woods v. Charles Gabus Ford, Inc.*, 962 N.W.2d 1, 6–7 (Iowa 2021); *Sims v. NCI Holding Corp.*, 759 N.W.2d 333, 338 (Iowa 2009). In other words, "substantial compliance is compliance with respect to those requirements that are necessary 'to assure the reasonable objectives' of the statute are met." *Harrison v. Emp. Appeal Bd.*, 659 N.W.2d 581, 586 (Iowa 2003) (quoting *Super./Ideal, Inc. v. Bd. of Rev.*, 419 N.W.2d 405, 407 (Iowa 1988)). Accordingly, "the starting point for our analysis is an identification of the purpose served by the [selection] provisions." *Id.*; *see also Residential & Agric. Advisory Comm., LLC v. Dyersville City Council*, 888 N.W.2d 24, 49 (Iowa 2016) ("[W]e must determine whether the purpose of the statute or rule has been accomplished.").

Just four years ago, in *Dix v. Casey's General Stores, Inc.,* we identified that purpose. 961 N.W.2d 671, 689 (Iowa 2021). We said that "[t]he selection requirements are aimed at preventing employers from targeting or exempting specific employees for drug tests." *Id.* Here, Gabus fulfilled that purpose. It selected the employees to be tested using a random method that avoided

targeting and, as a practical matter, differed little from the statutory requirements. Applying *Dix*, our other cases, and common sense, I would find that Gabus substantially complied with Iowa Code section 730.5(8)(*a*).

## II. Gabus Substantially Complied with the Statute.

Iowa Code section 730.5(8)(*a*)(1) allows unannounced drug testing of persons randomly selected from the following pool:

> The entire employee population at a particular work site of the employer except for . . . employees who are not scheduled to be at work at the time the testing is conducted because of the status of the employees or who have been excused from work pursuant to the employer's work policy prior to the time the testing is announced to employees.

Strictly speaking, section 730.5(8)(*a*)(1) contemplates that the "pool" will be formed of all employees at the worksite *after excluding* those "not scheduled" to be present or who have been "excused" from work under the employer's work policy. *Id.* Gabus didn't quite do that. Instead, treating all employees at the worksite as a pool, it allowed the outside vendor to develop a random list of employees to be tested, including alternates. At the time of testing, it *then excluded from the testing list* anyone who wasn't at the worksite that day.

I do not think it is a big deal whether the exclusion occurs before or after the testing list has been developed. Either way, the unannounced testing is random; anyone who is present has an equal chance of being selected, and the procedure doesn't allow targeting or exemption of disfavored employees or groups of employees.

As I've already noted, substantial compliance is "compliance in respect to essential matters necessary to assure the reasonable objectives of the statute." *Sims*, 759 N.W.2d at 338 (quoting *Super./Ideal, Inc.*, 419 N.W.2d at 407). So what is the objective here? We discussed it in *Dix*:

> The selection requirements are aimed at preventing employers from targeting or exempting specific employees for drug tests. *See id.* § 730.5(14)(*a*) (imposing a civil penalty of $1000 for improperly targeting or exempting employees from drug tests).

961 N.W.2d at 689.

In *Dix*, after concluding that the purpose of the selection provisions was as described above, we considered whether there had been substantial compliance. *Id.* at 682. There, the employer had 184 employees originally scheduled to work on the day of testing. *Id.* at 689. The plan had been to test 167 names selected at random, but in the end only 145 employees were tested, including alternates. *Id.* Twenty-seven employees had been slated for testing and avoided testing because of shift changes or vacation or because they called in sick, went home sick, or were "no shows." *Id.* at 679, 689–90. In addition, two persons were inadvertently left out of the pool, although they had been scheduled to work and did work that day. *Id.* at 689–90.

Obviously, none of the foregoing twenty-nine people were tested. Still, we held that this amounted to substantial compliance. *Id.* at 690–91. We cited the need for "some give," particularly as to the employees who didn't show up the day of testing, and "some room for human error," especially as to the two who did show up and got away with not being tested. *Id.* at 690. We spoke of the importance of examining section 730.5 selection for drug testing "from a practical standpoint." *Id.*

If there was substantial compliance in *Dix*, there was substantial compliance here. In the present case, as in *Dix*, there is no basis for claiming deliberate targeting or deliberate exemption.

In *Dix*, it was undisputed that everyone at the worksite (with two inadvertent exceptions) was tested. *Id.* at 679. Here, it is undisputed that a

totally random selection of the people who were present on the worksite was tested. Both scenarios substantially comply with the statute. In essence, both the *Dix* employer and Gabus did the same thing: working with an outside vendor, they developed a list with alternates and then went through the list, skipping over the people who weren't at the workplace that day. *See id.* at 678–79.

In the end, the only practical difference between what Gabus did and what the statute requires is that employees who weren't physically present when testing was announced but who were technically "scheduled" to work and had not been "excused" should have been summoned to the workplace and tested. Yet we tolerated the same situation in *Dix*, holding that it amounted to substantial compliance. *Id.* at 689–90.

The majority glosses over the facts and law of *Dix*, instead relying on what *Dix* supposedly "teaches." According to the majority, *Dix* "teaches" that "reasonable efforts" to comply with what "the legislature has commanded" are a prerequisite to substantial compliance. I can't find such a teaching in *Dix*, and it's not consistent with what *Dix* actually *says* about substantial compliance. *See id.* at 682 ("Substantial compliance is said to be compliance in respect to essential matters necessary to assure the reasonable objectives of the statute." (quoting *Sims* 759 N.W.2d at 338)). Our cases do not hold that substantial compliance requires efforts to *strictly comply* with the statute. Instead, they focus on whether the *objectives* of the statute have been met. Thus, they indicate that one can substantially comply with a statute by intentionally doing something that's a bit different but just as good. *See, e.g.*, *Ortiz v. Loyd Roling Constr.*, 928 N.W.2d 651, 655 (Iowa 2019) (finding that service by email substantially complied with a statute that required service by mail). That's what Gabus did here.

Perhaps it is time for the legislature to reexamine the statute. In these days of flexible work schedules with opportunities for remote work, it seems increasingly impractical to determine in advance who is "scheduled" to be at the workplace and who is "excused" from work. Iowa Code § 730.5(8)(*a*)(1). But in the meantime, we should apply our established definition of substantial compliance, including our four-year-old *Dix* decision. I would find substantial compliance here.

For the foregoing reasons, I would vacate the decision of the court of appeals on this issue and affirm the district court's grant of summary judgment in favor of Gabus.[1]

Christensen, C.J., and Waterman, J., join this dissent.

---

[1]The court of appeals also found issues of fact as to Gabus's compliance with the written policy and training requirements. *See* Iowa Code § 730.5(9)(*b*) (written policy requirements), (*h*) (training requirements). I would affirm the district court's grant of summary judgment on these points as well.