**Andrew HARRISON, Appellee,**

v.

**EMPLOYMENT APPEAL BOARD and Victor Plastics, Inc., Appellants.**

**No. 02–0184.**

Supreme Court of Iowa.

April 2, 2003.

Thomas D. Wolle of Moyer & Bergman, P.L.C., Cedar Rapids, for appellant Victor Plastics, Inc.

Richard R. Ramsey, Des Moines, for appellant Employment Appeal Board.

Jenny Schulz of Legal Services Corp. of Iowa, Cedar Rapids, for appellee.

TERNUS, Justice.

This case involves the interplay between Iowa's workplace drug testing law, Iowa Code section 730.5 (2001), and an employee's eligibility for unemployment benefits. The appellant, Employment Appeal Board,

denied unemployment benefits to the appellee, Andrew Harrison, on the ground of misconduct based on Harrison's positive drug test. The district court reversed the agency decision, concluding (1) the appellant employer, Victor Plastics, Inc., had not complied with the statutory requirements for the drug test that provided the basis for the Board's finding of misconduct, and (2) as a consequence, the test results could not be used to support the Board's finding. On the Board and employer's appeal, we affirm.

## I. *Iowa's Workplace Drug Testing Law.*

Our examination of the facts of this case will be more meaningful if we first review the drug testing law against which the employer's actions must be judged. Therefore, we begin with a discussion of those portions of section 730.5 that are pertinent to this appeal.

Iowa Code section 730.5 sets forth the requirements for workplace drug testing in the private sector. Prior to 1998, it prohibited "random or blanket drug testing of employees." *See* Iowa Code § 730.5(2) (1997). In 1998, the legislature amended section 730.5 to permit such tests. 1998 Iowa Acts ch. 1011. Currently, section 730.5(4) states:

> To the extent provided in subsection 8, an employer may test employees and prospective employees for the presence of drugs or alcohol as a condition of continued employment or hiring. *An employer shall adhere to the requirements of this section concerning the conduct of such testing and the use and disposition of the results of such testing.*

Iowa Code § 730.5(4) (emphasis added). The statute specifically permits the employer to use a confirmed positive drug test result "as a valid basis for disciplinary . . . actions pursuant to the requirements of the employer's written policy *and the requirements of this section,*" including "termination of employment." *Id.* § 730.5(10) (emphasis added).

Subsection 7 of the statute outlines the testing procedures, stating that "[a]ll sample collection and testing for drugs or alcohol under this section *shall be performed* in accordance with" the specified conditions. *Id.* § 730.5(7) (emphasis added). The law requires that collected samples be split into two components. *Id.* § 730.5(7)(*b*). If an initial screening of the first portion is positive, the results must be confirmed by a second test of the same portion using a different chemical process than was used in the initial screening. *Id.* § 730.5(7)(*f*)(1). The second portion of the sample is reserved for "a second, independent confirmatory test as provided in paragraph '*i*'." *Id.* § 730.5(7)(*b*). Paragraph "*i*" states in relevant part:

> If a confirmed positive drug or alcohol test for a current employee is reported to the employer by the medical review officer, the employer shall notify the employee *in writing by certified mail, return receipt requested,* of the results of the test, the employee's right to request and obtain a confirmatory test of the second sample collected pursuant to paragraph "*b*" at an approved laboratory of the employee's choice, and the fee payable by the employee to the employer for reimbursement of expenses concerning the test. The fee charged an employee shall be an amount that represents the costs associated with conducting the second confirmatory test, *which shall be consistent with the employer's cost for conducting the initial confirmatory test on an employee's sample.* If the employee, in person or by certified mail, return receipt requested, requests a second confirmatory test, identifies an approved laboratory to conduct the test,

and pays the employer the fee for the test *within seven days from the date the employer mails by certified mail, return receipt requested, the written notice to the employee of the employee's right to request a test,* a second confirmatory test shall be conducted at the laboratory chosen by the employee.... If the results of the second test do not confirm the results of the initial confirmatory test, the employer shall reimburse the employee for the fee paid by the employee for the second test and the initial confirmatory test shall not be considered a confirmed positive drug or alcohol test for purposes of taking disciplinary action pursuant to subsection 10.

*Id.* § 730.5(7)(*i*) (emphasis added).

With this general frame of reference, we now turn to the facts of the case before us.

## II. *Background Facts and Proceedings.*

Harrison was employed by Victor Plastics from January 31, 2000, to December 11, 2000, when he was terminated because he tested positive for marijuana in a random drug test. The test was conducted pursuant to an employer policy that provided for unannounced random testing of employees.

On December 4, 2000, Mercy Occupational Health, an independent company used by Victor Plastics to perform random drug testing of its employees, notified Victor Plastics that Harrison had been selected to be one of the employees tested that day. A urine sample was obtained from Harrison at the plant site.

On December 11, 2000, Mercy informed Harrison by telephone that his sample tested positive for marijuana. Mercy also faxed a report to Victor Plastics with the test results. That same morning Harrison called the company's human resource manager, Chris VeVerka, and informed her

that he had tested positive for marijuana. VeVerka testified at the later unemployment hearing that she informed Harrison during their phone conversation that he could pay to have a test done on the remaining sample and such a test would cost approximately $150. (The record shows the initial screening and the first confirmatory test had a *combined* cost to Victor Plastics of $80 to $100 per person.) She said Harrison declined the test, indicating he did not want to spend the money as he had just paid off his credit card and was going on a trip, and because the second sample would not test any differently than the first sample. Pursuant to a company policy stating "[a] confirmed positive drug test will result in termination," VeVerka then informed Harrison he was fired.

VeVerka confirmed in her testimony that Victor Plastics did not notify Harrison in writing that he could request a second test. Nor did VeVerka inform Harrison that if the second test was negative, Victor Plastics would have to reimburse him for the cost of the test. She did not do so, she explained, because Harrison was not interested in doing a second test. For the same reason, she thought it unnecessary to delay his termination in order to give him time to come up with the money.

Harrison's testimony at the hearing was substantially the same as VeVerka's. He said he told her he could not afford the test because he had just paid on his credit cards and had bought a nonrefundable plane ticket to visit a friend. He stated he did not consider borrowing the money for the test because he "[d]idn't have any time[;] [i]t was either you're going to test or you're not." Harrison also denied smoking marijuana. He confirmed at the hearing that he had not received written notification from the company concerning his positive test results.

Subsequent to his termination, Harrison applied for unemployment benefits. A hearing officer denied his claim, ruling Harrison was disqualified from receiving benefits because he was discharged for misconduct. *See* Iowa Code § 96.5(2)(*a*) ("An individual shall be disqualified· for benefits ... [i]f the department finds that the individual has been discharged for misconduct in connection with the individual's employment."). The only factual basis for this disposition was Harrison's positive drug test. Harrison appealed. After a hearing at which VeVerka and Harrison testified as outlined above, an administrative law judge upheld the hearing officer's decision. Harrison's intra-agency appeal to the Board was similarly unsuccessful.

Harrison then sought judicial review. He argued the drug test was illegal because Victor Plastics had not followed the requirements for random drug testing set forth in section 730.5 and, therefore, the test results could not be used as a basis for a finding of misconduct. The district court overturned the agency's decision, holding that decision was affected by error of law. *See* Iowa Code § 17A.19(10)(*c*) (providing that court may reverse agency ruling affected by error of law). Relying on this court's decision in *Eaton v. Iowa Employment Appeal Board,* 602 N.W.2d 553, 554 (Iowa 1999), the district court concluded an employer must comply with section 730.5 before the Board may rely on a positive drug test to deny unemployment benefits. Here, the court noted, Victor Plastics had failed to follow the requirements of section 730.5 in several significant particulars. The court concluded, therefore, that the Board erred in relying on Harrison's positive drug test to support its finding of misconduct.

The employer and Board appeal the district court's decision. Because the Board joined in the brief filed by the employer, references to the employer's position and arguments on appeal apply equally to the Board.

### III. *Issues on Appeal.*

On appeal, the employer contends the district court erroneously concluded that it had not complied with section 730.5 and that this failure precludes the company's reliance on the drug test as a basis for its claim of misconduct. More specifically, Victor Plastics argues that it substantially complied with ·section 730.5 because the "reasonable objectives" of the statute were met despite the employer's failure to comply with the "technical notice provisions" of the law. ·

Harrison contends the statute requires strict compliance with its terms as evidenced by the legislature's frequent use of the word "shall." *See* Iowa Code § 4.1(30) (stating use of the term "shall" implies a duty). Even if substantial compliance is sufficient, Harrison disputes that Victor Plastics substantially complied with the statutory requirements. He claims the employer failed to observe the notice provisions of the statute, failed to provide accurate information to him about the actual cost of a second confirmatory test, and failed to inform him that he would be reimbursed if the second test were negative. In addition, Harrison asserts Victor Plastics failed to present evidence that it complied with the statutory requirements regarding (1) random selection of employees, (2) proper collection and labeling of Harrison's urine sample, (3) a proper chain of custody of the sample, (4) certification of the laboratory and training of the personnel involved in testing his sample, and (5) the chemical testing processes used. Finally, Harrison contends the company's written drug policy violates section 730.5 because it states the company "has instructed its medical review officer that no

explanation for the presence of this substance [marijuana] should be accepted." *See* Iowa Code § 730.5(7)(*c*)(2) ("An employee ... shall be provided an opportunity to provide any information which may be considered relevant to the test ...."); *id.* § 730.5(7)(*g*) (stating medical review officer must consider any information provided by employee). Based on these violations and deficiencies, Harrison argues, the employer failed to prove that Harrison was terminated from his employment on the basis of a "confirmed positive drug ... test result" within the meaning of section 730.5(10).

Although the parties dispute whether strict compliance with the statute is required or whether substantial compliance is sufficient, we do not find it necessary to resolve this disagreement. Even if we assume an employer need only substantially comply with the provisions of section 730.5, we do not think that level of compliance was shown in this case. In addition, we conclude the employer's noncompliance with the notice requirements of the statute is sufficient to bar its reliance on Harrison's drug test results to prove misconduct. Therefore, we do not address the sufficiency of the employer's proof with respect to its compliance with the technical requirements for testing. Nor do we consider the validity of the employer's drug testing policy.

### IV. *Scope of Review.*

Iowa's Administrative Procedure Act, Iowa Code chapter 17A, governs this court's review of unemployment benefit cases. *See Lee v. Employment Appeal Bd.*, 616 N.W.2d 661, 664 (Iowa 2000). Pursuant to section 17A.19(10), we act in an appellate capacity to correct errors of law on the part of the agency. *Id.*

In terms of judicial review, the essence of the employee's claim here is that there is not substantial evidence to support the agency's finding of misconduct. *See* Iowa Code § 17A.19(10) (allowing court to reverse agency decision if the agency's action rests on a finding of fact "that is not supported by substantial evidence"). This claim is based on the argument that the employer cannot use the positive drug test to show misconduct because the employer did not comply with section 730.5. The employee asserts the agency erroneously interpreted this statute in concluding that the statutory deviations were not significant enough to preclude reliance on the test results. *See id.* (allowing court to reverse if agency's action is "[b]ased upon an erroneous interpretation of a provision of law whose interpretation has not clearly been vested by a provision of law in the discretion of the agency"). We note in this regard that we give no deference to the Board's interpretation of section 730.5 in view of the fact that workplace drug testing is not within this agency's area of authority. Iowa Code § 17A.19(11)(*b*); Arthur E. Bonfield, *Amendments to Iowa Administrative Procedure Act, Report on Selected Provisions to Iowa State Bar Association and Iowa State Government* 70 (1998).

### V. *Discussion.*

A. *Substantial compliance.* We have previously held that substantial compliance is compliance with respect to those requirements that are necessary "to assure the reasonable objectives" of the statute are met. *Superior/Ideal, Inc. v. Bd. of Review*, 419 N.W.2d 405, 407 (Iowa 1988). Therefore, the starting point for our analysis is an identification of the purpose served by the notice provisions, which are contained in subsection (7) of the statute.

Based on even a cursory review of the testing procedures set forth in subsection (7), one can readily conclude that the legis-

lature sought to ensure the accuracy of any drug test serving as the basis for adverse employment action. *See, e.g.,* Iowa Code § 730.5(7)(*a*) (collection of sample must be "in a manner reasonably calculated to preclude contamination or substitution of the specimen"); *id.* § 730.5(7)(*e*) (testing must be done at a certified laboratory); *id.* § 730.5(7)(*g*) (before positive results of drug test are reported to employer, medical review officer must review results, verify adequate chain of custody, and consider any information provided by employee). The multiple testing required before a test is considered a "confirmed positive drug test" for purposes of disciplinary action is an example of the legislature's attempt to assure the correctness of testing results. *Id.* § 730.5(7)(*f*)(1) (requiring confirmation of an initial positive screening test); *id.* § 730.5(7)(*i*)(1) (allowing employee the option of having a second confirmatory test done).

Although accurate testing inures to the benefit of both the employer and the employee, the provisions with respect to a second confirmatory test appear to be for the benefit and protection of the employee in particular in view of the fact that it is the employee who determines whether the second confirmatory test will be done. The notice requirements at issue in the case before us relate to the employee's opportunity to require a second confirmatory test. Thus, in viewing whether the employer's conduct in this case substantially complied with the statute, we must determine whether the employer's actions reasonably accomplished the legislature's objective to protect the employee from adverse employment action based on an erroneous test result.

As noted at the outset of our opinion, section 730.5(7)(*i*)(1) requires that the employer give an employee written notice of a positive test result. Such notice must be by certified mail, return receipt requested. The notice must inform the employee of his right to have a second confirmatory test done at a laboratory of his choice and it must tell the employee what the cost of that test will be. Any fee charged by the employer must be consistent with the cost to the employer of the initial confirmatory test. An employee has seven days to request a second test.

It is important to consider how these requirements serve to protect the employee. A written document, particularly one sent by certified mail, conveys a message that the contents of the document are important. Thus, an employee receiving notice in this fashion would be more likely to consider his decision with respect to a second test to be an important one. Likewise, he would more deliberately reflect on his options and the ramifications of his decision. The seven-day period given to the employee allows adequate time for the employee to make a thoughtful choice. The requirements that the employee be informed of the cost of a second test and that he can choose the laboratory to perform the test ensures the employee's decision will be a well-informed one, based on all relevant considerations. The statute's limitation on the amount an employee may be charged for a second test guarantees that an employee will be treated fairly and not be unreasonably discouraged from seeking a second confirmatory test.

■ A review of the employer's actions here reveals that very few, if any, of these goals were met. The employee in this case was informed by telephone of his right to have a second confirmatory test done at his expense. He was not told that he could choose the laboratory to conduct the test, nor was he told that he had seven days to think about it. Finally, he was given a significantly inflated price for the

test, a price that was not consistent with the cost of the initial confirmatory test to the employer. Under these circumstances, Harrison would be more inclined to make a hurried decision without thinking through the alternatives available to him. His choice would certainly not be a knowledgeable one, given the fact that he had incomplete and inaccurate information upon which to base his decision.

Under the factual scenario of this case, the protections provided the employee by the statute are virtually nonexistent. Clearly there was not substantial compliance. We hold, therefore, that the Board was wrong to discount the importance of the employer's violations of section 730.5.

■ **B.** *Consequences of noncompliance.* In *Eaton,* we stated "[i]t would be contrary to the spirit of chapter 730 to allow an employer to benefit from an unauthorized drug test by relying on it as a basis to disqualify an employee from unemployment compensation benefits." 602 N.W.2d at 558. As a result, we held that the Employment Appeal Board erred in that case by relying on such a test to support a finding of misconduct. *Id.* Victor Plastics argues the same result is not warranted here because, unlike the test in *Eaton,* the test in this case was authorized by law and the employer merely failed to strictly follow the "technical notice requirements" of the statute. We disagree.

Although the legislature now allows random workplace drug testing, it does so under severely circumscribed conditions designed to ensure accurate testing and to protect employees from unfair and unwarranted discipline. The importance of these protections, including the procedural safeguards contained in section 730.5(7), is highlighted by the statutory provision making an employer "who violates this section ... liable to an aggrieved employee ... for affirmative relief including rein-

statement ... or any other equitable relief as the court deems appropriate." Iowa Code § 730.5(15). Although an employer is entitled to have a drug free workplace, it would be contrary to the spirit of Iowa's drug testing law if we were to allow employers to ignore the protections afforded by this statute, yet gain the advantage of using a test that did not comport with the law to support a denial of unemployment compensation.

Our decision in *Reigelsberger v. Employment Appeal Board,* 500 N.W.2d 64 (Iowa 1993), a case upon which the employer relies, is distinguishable. In that case, we upheld a denial of unemployment compensation based on a finding of misconduct that rested on the employee's refusal to undergo treatment for his alcoholism. 500 N.W.2d at 64–65. We noted that had the employer obtained a positive blood test under the drug testing law in effect at that time, it could have conditioned continued employment on the employee's successful completion of alcohol treatment. *Id.* at 66. We held that the absence of such a test here, however, did not prevent the employer from requiring the employee to seek treatment. *Id.* Our decision was grounded on the "special circumstances" present in that case, notably that there was "no question that Reigelsberger had a continuing problem with alcoholism, a fact Reigelsberger acknowledged and of which [his employer] had actual knowledge." *Id.* Therefore, a blood test to establish that fact was not critical to support the employer's demand that the employee seek treatment.

In contrast, in the present case, there was no acknowledgement by Harrison that he had used marijuana; to the contrary, he denied any use from the beginning. Therefore, the special circumstances underlying our decision in *Reigelsberger* do not exist here. In addition, the role of the

drug test at issue in *Reigelsberger* was quite different than the role played by the drug test here. Harrison's positive drug test was the basis for discipline and disqualification; it was the sole proof of misconduct. In *Reigelsberger,* the omitted drug test related to a collateral issue; it would merely have verified an alcohol problem that all parties conceded existed. The actual misconduct was the employee's failure to seek alcohol treatment after being directed to do so, not his use of alcohol on the job. Therefore, our decision in *Reigelsberger* is inapposite.

In summary, we hold the Board erred in relying on the results of Harrison's drug test in deciding that he was not entitled to unemployment benefits. In the absence of this proof, the agency's finding of misconduct is not supported by substantial evidence. Therefore, the district court properly reversed the agency ruling. We remand this case to the agency for an award of unemployment benefits.

**AFFIRMED AND REMANDED.**