# IN THE SUPREME COURT OF IOWA

No. 19–0002

Submitted October 14, 2020—Filed June 25, 2021

**LUCAS WOODS,**

Appellant,

vs.

**CHARLES GABUS FORD, INC.,**

Appellee.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Jeanie K. Vaudt, Judge.

An employer seeks further review of a court of appeals' decision reversing in part the district court's judgment in favor of the employer on an employee's claim seeking relief for alleged drug testing violations. **DECISION OF COURT OF APPEALS AFFIRMED; DISTRICT COURT JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

Oxley, J., delivered the opinion of the court, in which all justices joined.

Harley C. Erbe (argued) of Erbe Law Firm, Des Moines, for appellant.

Steven H. Shindler and James R. Hinchliff (argued) of Shindler, Anderson, Goplerud & Weese, P.C., West Des Moines, for appellee.

**OXLEY, Justice.**

In this companion case to *Dix v. Casey's General Stores, Inc.*, ___ N.W.2d ___, ___ (Iowa 2021), we address the nuances of Iowa's workplace drug testing statute, the importance of complying with all aspects of its notice provisions, and the consequences for failing to do so. For the reasons stated below, we affirm in part, reverse in part, and remand for the district court to award appropriate relief.

## I. Factual and Procedural Background.

Lucas Woods was employed by Charles Gabus Ford (CGF) as a lube technician. On August 9, 2017, Woods was randomly selected for a drug test conducted by Mid-Iowa Occupational Testing. The lab technician in charge of collecting Woods's sample rejected his first sample for being insufficient. The technician testified that the sample appeared to have been altered, as the color was a bright yellow-green, similar to Mountain Dew. The technician flushed the first sample and instructed Woods to drink water and provide a second sample, which Woods did. This second sample tested positive for methamphetamine. The technician testified that Woods admitted to him that he had used methamphetamine the weekend prior to the test. Woods, however, denied telling the technician he had recently used methamphetamine.

According to Woods, when he brought his second sample to the technician, the technician combined it with another sample that was sitting out. Woods claims this other sample belonged to someone else.

Later testing by Quest Diagnostics confirmed the positive result for methamphetamine. Quest sent the results to a doctor, who confirmed the results and attempted to contact Woods. The doctor's staff attempted at least four phone calls to the number they believed Woods provided on his form and left voicemails. The number they called did not belong to Woods,

which they later ascribed to difficulty reading his handwriting. After the failed calls, the doctor sent the information to Mid-Iowa, which informed Kelsey Gabus McBride, HR director at CGF.

As a result, CGF fired Woods. Following Woods's termination, Gabus McBride sent Woods a letter informing him of the results of his drug test, his right to get a confirmatory test, and that he would have to pay for a confirmatory test. The letter also explained that if the sample tested negative, CGF would reimburse Woods the cost of the confirmatory test. However, the letter did not include the cost for the test. It was also sent by certified mail but without return receipt requested.

Following his termination, Woods sued CGF under Iowa Code section 730.5(15) (2017). He alleged CGF did not substantially comply with section 730.5 because it did not inform him of the cost of the retest, nor was the letter sent by certified mail with return receipt requested. In a proposed order submitted after the bench trial, Woods also argued that the test was invalid because CGF failed to adequately train the employees who administered it. The district court found the letter substantially complied with section 730.5 and dismissed Woods's petition.

The court of appeals reversed. It found the manner the letter was sent substantially complied with the statute despite not being sent return receipt requested and the training issue was not preserved for review. However, it concluded the contents of the letter did not substantially comply with section 730.5 because the letter did not provide the cost of a retest. CGF applied for, and we granted, further review.

## II. Standard of Review.

The parties agree this case was tried in equity. Therefore, our review is de novo. *Dix*, ___ N.W.2d at ___. "[U]nder a de novo review we will make our own legal conclusions, as we are not bound by and give no deference

to the trial court's conclusions of law." *In re Est. of Johnson*, 739 N.W.2d 493, 496 (Iowa 2007). To the extent the proceeding turns on questions of fact, "[w]e give deference to the factual findings of the court but are not bound by them." *Id.*

### III. Analysis.

Woods's claims focus primarily on the notice he received following his positive test for methamphetamine. He argues that notice was deficient in two respects: (1) it did not include the cost of a retest and (2) it was not sent return receipt requested. He also alleges Gabus McBride was not properly trained.

**A. Whether Charles Gabus Ford Complied with Section 730.5's Training Requirements.** Woods argues Gabus McBride was not properly trained to administer drug tests under Iowa Code section 730.5(9)(*h*). However, Woods raised the issue for the first time in the proposed findings of fact and conclusions of law he submitted following the bench trial, and the district court did not rule on it.

> "It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." This doctrine is based on the principle that "[i]t is not a sensible exercise of appellate review to analyze facts of an issue 'without the benefit of a full record or lower court determination[].'"

*UE Loc. 893/IUP v. State*, 928 N.W.2d 51, 60 (Iowa 2019) (alterations in original) (citation omitted) (quoting *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002)).

Because Woods did not raise this issue until after completion of the trial, CGF did not present evidence of Gabus McBride's training. No questions were asked about her training during trial testimony, by Woods or CGF. That Woods raised the issue a second time in his motion to reconsider does not change the fact that CGF had no opportunity to

present evidence about whether Gabus McBride was properly trained. It is the employer's burden to prove compliance with section 730.5, Iowa Code § 730.5(15)(*b*), but the employee must first put the employer on notice of the employee's claims so the employer may respond appropriately. *Cf. U.S. Bank v. Barbour,* 770 N.W.2d 350, 354 (Iowa 2009) ("A 'petition need not allege ultimate facts that support each element of the cause of action[;]' however, a petition 'must contain factual allegations that give the defendant "fair notice" of the claim asserted so the defendant can adequately respond to the petition.' " (alteration in original) (quoting *Rees v. City of Shenandoah,* 682 N.W.2d 77, 79 (Iowa 2004))).

CGF did not present evidence of Gabus McBride's training, but, in light of the fact that Woods did not raise the training issue until after the close of evidence, this issue was not preserved. *Cf. UE Loc. 893/IUP*, 928 N.W.2d at 60 ("Our doctrine of error preservation 'requires a party seeking to appeal an issue *presented to*, but not considered by, the district court to call to the attention of the district court its failure to decide the issue.' " (emphasis added) (quoting *Meier*, 641 N.W.2d at 540)). Thus, we do not decide whether Gabus McBride was properly trained. *See id.* ("The claim or issue raised does not actually need to be used as the basis for the decision to be preserved, but *the record must at least reveal the court was aware of the claim or issue and litigated it.*" (emphasis added) (quoting *Meier*, 641 N.W.2d at 540)).

**B. Whether Charles Gabus Ford Substantially Complied With Iowa Code Section 730.5's Notice Requirements.** Iowa Code section 730.5(7)(*j*)(1) declares:

> If a confirmed positive test result for drugs or alcohol for a current employee is reported to the employer by the medical review officer, the employer shall notify the employee in writing *by certified mail, return receipt requested,* of the results

of the test, the employee's right to request and obtain a confirmatory test of the second sample . . . at an approved laboratory of the employee's choice, *and the fee payable* by the employee to the employer for reimbursement of expenses concerning the test. The fee charged an employee shall be an amount that represents the costs associated with conducting the second confirmatory test, which shall be consistent with the employer's cost for conducting the initial confirmatory test on an employee's sample.

(emphasis added).

We have described section 730.5 as providing "severely circumscribed conditions designed to ensure accurate testing and to protect employees from unfair and unwarranted discipline." *Harrison v. Emp. Appeal Bd.*, 659 N.W.2d 581, 588 (Iowa 2003). In *Sims v. NCI Holding Corp.*, we held that section 730.5(7) is subject to a substantial compliance standard. 759 N.W.2d 333, 338 (Iowa 2009). "Substantial compliance is said to be compliance in respect to essential matters necessary to assure the reasonable objectives of the statute." *Id.* (quoting *Superior/Ideal, Inc. v. Bd. of Rev.*, 419 N.W.2d 405, 407 (Iowa 1988)). This standard recognizes the detailed and often complex conditions placed on employers choosing to use a workplace drug testing program while ensuring compliance with the purposes and protections provided by the statutory scheme.

The notice requirement of section 730.5(7)(*j*)(1) provides important protections for the employee. *Id.*

Section 730.5(7)([*j*])(1) accomplishes this protective purpose by mandating written notice by certified mail of (1) any positive drug test, (2) the employee's right to obtain a confirmatory test, and (3) the fee payable by the employee to the employer for reimbursement of the expense of the test.

*Id.* The employer must "provid[e] notice to the employee of the positive test result and a meaningful opportunity to consider whether to undertake a confirmatory test" to substantially comply with section 730.5(7)(*j*)(1). *Id.* Woods argues the notice sent by CGF did not substantially comply with

section 730.5(7)(*j*)(1) in two respects: (1) CGF failed to include the specific cost of a retest in the letter and (2) CGF failed to send the letter return receipt requested.

1. *Cost of the retest.* Iowa Code section 730.5(7)(*j*)(1) requires that an employer provide notice to an employee with a confirmed positive test result including "the fee payable by the employee to the employer for reimbursement of expenses concerning the test." A letter that does not include the cost of a retest does not strictly comply with the statute. Nonetheless, if the letter provides "a meaningful opportunity to consider whether to undertake a confirmatory test," *Sims*, 759 N.W.2d at 338, CGF will have met its obligations by substantially complying with the statute.

The letter, accompanied by a notice of termination for failing a drug test, informed Woods he could obtain a confirmatory retest of the sample, but it would be at his own cost and he had only seven days to make the request. The required cost component of the notice was entirely missing from the letter. The cost of a retest, even if one expects to be reimbursed upon being exonerated by a retest, is vital information for making an informed decision. Knowing whether a test will cost $10 or $100 or $1000 makes a significant difference in a decision whether to request a retest. The cost of the retest may be entirely prohibitive for many who are unable to raise the money in the short seven-day period, especially on the heels of being fired. Even if the employee can obtain the money for the retest, the temporary loss of the money can affect the employee's ability to pay bills in the short term. Woods testified the reason he did not request a retest was that he did not know the cost and he was the sole provider for his children. This is exactly the kind of situation where the cost of the retest is important to allow the employee to make a meaningful decision. Woods's testimony that he might not have requested a retest had he been

informed of the cost does not change whether CGF substantially complied with the statute's mandate.

CGF's compliance with the statute in many, or even most, other ways does not excuse its complete failure to provide the cost of the retest, which is a significant piece of information required to be included in the notice. It is not enough that an employee may be able to find the potential cost of a retest on his own. The statute requires the employer to provide that information, and the employer is in the best position to know the cost since the cost is, by statute, required to "be consistent with the employer's cost for conducting the initial confirmatory test." Iowa Code § 730.5(7)(*j*). Without knowing the cost of a retest, a person does not have "a meaningful opportunity to consider whether to undertake a confirmatory test." *Sims*, 759 N.W.2d at 338. CGF failed to substantially comply with the statute by failing to include the cost of a retest in the letter.

*2. Return receipt requested.* Woods's final contention is that CGF failed to substantially comply with section 730.5 because the letter it sent him was not sent return receipt requested. In *Sims* we explained the formal notice required by the statute "conveys to the addressee 'a message that the contents of the document are important' and worthy of the employee's deliberate reflection." *Id.* (quoting *Harrison*, 659 N.W.2d at 587). The ultimate question is whether the letter "provid[ed] notice to the employee of the positive test result and a meaningful opportunity to consider whether to undertake a confirmatory test." *Id.*

There is no dispute that Woods received the notice of his positive test. Woods advances no persuasive distinction between sending mail return receipt requested and sending it by certified mail. Any difference in conveying the serious nature of the letter is marginal. *See id.* Sending

the letter by certified mail without return receipt requested substantially complied with section 730.5(7)(*j*)(1).

3. *The remedy.* Since the district court found CGF substantially complied with the statute, it did not award Woods any relief. Normally, we would remand for the district court to decide whether Woods was "aggrieved" under Iowa Code section 730.5(15). *See Dix,* ___ N.W.2d at ___ (explaining that whether an employee is aggrieved "depends on the nature of the violation"). Unlike in *Sims,* where the retest confirmed the positive test results so the employee was entitled only to costs and attorney's fees, *see* 759 N.W.2d at 341 ("The district court nonetheless properly exercised its authority under the circumstances of this case to order NCI to reimburse Sims for attorney fees and costs incurred in litigation commenced as a consequence of NCI's failure to substantially comply with the notice requirement."), there is no way to determine whether Woods's retest would confirm his original positive test result because the sample no longer exists. Thus, this case is more like *Tow v. Truck Country of Iowa, Inc.,* where an employer violated section 730.5(6)(*b*) with respect to a prospective employee when it incorrectly informed him he was required to pay for a retest after his preemployment drug test was deemed inconclusive. 695 N.W.2d 36, 38–39 (Iowa 2005). Even though the employee declined to take the retest, we affirmed the district court's award of back pay under section 730.5(15)(*a*) for the employer's violation of the statute. *Id.* at 39–40. The same result applies here. Even though Woods testified he might not have asked for a retest had he been informed of the cost of the test, he was aggrieved when he was prevented from making an informed decision, and there is no way to know what the outcome of the retest would have been.

We note that Woods did not seek reinstatement, asking only for a monetary award of back pay and front pay. "Front pay is a 'form of relief that assumes the plaintiff would have continued in [his or her] position absent unlawful actions by the defendant.'" *Channon v. United Parcel Serv., Inc.*, 629 N.W.2d 835, 848 (Iowa 2001) (alteration in original) (quoting Eileen Kuklis, Comment, *The Future of Front Pay Under the Civil Rights Act of 1991: Will it be Subject to the Damage Caps?*, 60 Alb. L. Rev. 465, 469 (1996)). As an equitable remedy, courts may award front pay in lieu of reinstatement where reinstatement is not practical or possible. *Id.* The amount of front pay depends on whether, and how long, the employee would have continued employment. *See Smith v. Smithway Motor Xpress, Inc.*, 464 N.W.2d 682, 687–88 (Iowa 1990). However, if the employee's own conduct would make reinstatement improper, a front pay award would also be improper. *See Sellers v. Mineta*, 358 F.3d 1058, 1064 (8th Cir. 2004) ("[P]ost-termination misconduct of a type that renders an employee actually unable to be reinstated or ineligible for reinstatement should also be one of the 'factual permutations' which is relevant in determining whether a front pay award is appropriate." (quoting *McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 361, 115 S. Ct. 879, 886 (1995))).

We remand this case for the district court to determine what, if any, equitable relief is appropriate based on the existing trial record.

**IV. Conclusion.**

CGF failed to substantially comply with section 730.5(7)(*j*)(1) when it failed to include the cost of a retest in its notice to Woods. The judgment of the district court is affirmed in part, reversed in part, and this case is remanded for consideration of appropriate relief based on the existing trial record.

**DECISION OF COURT OF APPEALS AFFIRMED; DISTRICT COURT JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**