NOT FOR PUBLICATION WITHOUT APPROVAL OF
THE TAX COURT COMMITTEE ON OPINIONS

```
-------------------------------------------------------x
H & R MANAGEMENT ASSOCIATES        :
INC.,                              :        TAX COURT OF NEW JERSEY
                    Plaintiff,     :        DOCKET NO:  001512-2025
                                   :
        v.                         :
                                   :
TOWNSHIP OF RARITAN,               :
                                   :
                    Defendant.     :
-------------------------------------------------------x
```

Decided September 25, 2025.

Chad E. Wolf and Vincent L. Esposito for H & R Management Associates Inc. (Wolf Vespasiano LLC, attorneys).

Wesley E. Buirkle for the Township of Raritan (DiFrancesco, Bateman, Kunzman, Davis, Lehrer & Flaum, P.C., attorneys).

CIMINO, J.T.C.

## I.    INTRODUCTION

Chapter 91 requires certified mail for service of a request for property income information.  Failing to respond to the request limits a tax appeal.

The material facts are not in dispute.  The municipality asserts that the assessor sent the Chapter 91 request by certified mail.  The taxpayer asserts the United States Postal Service never delivered the Chapter 91 request sent by certified mail.  The records of the Postal Service confirm both assertions.  Neither party disputes the assertion of the other.

The municipality moves to limit the taxpayer's appeal for failure to respond to the Chapter 91 request. The municipality argues that "all a Tax Assessor needs to do to satisfy Chapter 91's mailing requirement is to send the request by certified mail." The municipality further asserts that regardless of whether the Postal Service delivers or attempts to deliver the certified mail, the mere mailing of the request by certified mail satisfies the statute. The taxpayer opposes the motion. Both parties waive oral argument.

Chapter 91's certified mail requirement is more than a ritual that is satisfied once the assessor drops the request in the mailbox. Seeking a signature and name of the recipient serves the fundamental goal of alerting a recipient of the importance of the correspondence.

The simple question here comes down to who should bear the risk when the Postal Service fails to provide certified mail service. The court holds the risk is upon the sender who is in control of the process and can monitor the tracking or signature status. For if the Postal Service fails to do its job, then the sender can follow-up with the Postal Service and demand proper service or resend the request. While the taxpayer has an obligation to respond to a Chapter 91 request, the assessor has a related obligation of ensuring the request is served in accordance with Chapter 91.

## II. WHAT IS CHAPTER 91?

New Jersey has long required taxpayers to "account" for their real property. See, e.g., Acts of the Gen. A. of the Province of N.J. ch. 111, § 4 (John Kinsey 1732); L. 1798, c. 805, § 1; Rev. 1846 tit. 35, ch. 1, § 1; L. 1903, c. 208, § 8; L. 1918, c. 236, § 403; R.S. 54:4-34 (1937). Legislation in 1960 expanded the accounting to explicitly include income generated. L. 1960, c. 51, § 29. By gathering and analyzing income information, an assessor should be able to reach more accurate assessments.

As the statute existed prior to 1979, the taxpayer had no incentive to provide information. "[T]he property owner [was] not subject to any penalty for not disclosing property income information." S. Revenue, Fin. & Appropriations Comm. Statement to S. 309 (Jan. 26, 1978). The Legislature had a "problem" with a "property owner . . . free to appeal the assessment, notwithstanding his refusal to provide information which would . . . affect[] the valuation, and, perhaps, avoid[] the appeal from the assessment." Ibid. "Further . . . the assessor [had] no access to information on which the appellant [was] basing his appeal and thus the assessor [was] unprepared to testify in argument to the appellant's representations." Ibid. If a taxpayer could withhold information until the time of appeal, the assessor would be "required either to prepare a second valuation of the property – a tremendous waste of valuable time and resources – or to defend the original valuation on the

3

taxpayer's appeal." Ocean Pines, Ltd. v. Borough of Point Pleasant, 112 N.J. 1, 7 (1988).

To remedy this problem, the Legislature adopted Chapter 91 in 1979 to limit an appeal when a taxpayer ignores a request for income information. L. 1979, c. 91.

In relevant part, N.J.S.A. 54:4-34, as amended by Chapter 91, now reads:

> Every owner of real property of the taxing district shall, on written request of the assessor, made by certified mail, render a full and true account of his name and real property and the income therefrom, in the case of income-producing property, . . . and if he shall fail or refuse to respond to the written request of the assessor within 45 days of such request, . . . the assessor shall value his property at such amount as he may, from any information in his possession or available to him, reasonably determine to be the full and fair value thereof. No appeal shall be heard from the assessor's valuation and assessment with respect to income-producing property where the owner has failed or refused to respond to such written request for information within 45 days of such request . . . . In making such written request for information pursuant to this section the assessor shall enclose therewith a copy of this section.
>
> [N.J.S.A. 54:4-34 (emphasis added).]

The assessor has three obligations when sending a Chapter 91 request, namely, "(1) the letter must include a copy of the text of the statute; (2) it must be sent by certified mail to the owner of the property; and (3) it must spell out the consequences of failure to comply with the assessor's demand, namely a bar to the

taxpayer's taking of an appeal from its assessment." [1]  Southland Corp. v. Township of Dover, 21 N.J. Tax 573, 578 (Tax 2004).  See also Thirty Mazel LLC v. City of East Orange, 24 N.J. Tax 357, 362 (Tax 2009); Fairfield Dev. v. Borough of Totawa, 27 N.J. Tax 306, 308 (Tax 2013).

If the taxpayer fails to respond to a municipality's written request for information within forty-five days, an appeal "is limited in its scope to the reasonableness of the valuation based upon the data available to the assessor . . . . Encompassed within this inquiry are (1) the reasonableness of the underlying data used by the assessor, and (2) the reasonableness of the methodology used by the assessor in arriving at the valuation."  Ocean Pines, 112 N.J. at 11.  Thus, failing to respond to a Chapter 91 request sharply limits a tax appeal to what is commonly known as a reasonableness hearing.

"A reasonableness hearing . . . does not include plenary proofs as to the value of the property under appeal but only proofs as to whether the assessment imposed by the assessor was reasonable 'in light of the data available to the assessor at the time of valuation.'"  Lucent Technologies, Inc. v. Township of Berkeley Heights, 24 N.J. Tax 297, 308 (Tax 2008) (quoting Ocean Pines, 112 N.J. at 11).  "[T]he taxpayer is precluded on appeal from expanding the record beyond the information available

---

[1]  As to spelling out the consequences, there is some disagreement.  Town of Phillipsburg v. ME Realty, LLC, 26 N.J. Tax 57, 69 n.11 (Tax 2011); James-Dale Enters., Inc. v. Township of Berkeley Heights, 26 N.J. Tax 117, 124-25 (Tax 2011).

to the assessor at the time of valuation. The property's financial information, expert opinion as to value, comparable sales not used by the assessor, or any other potential evidence that could otherwise have been available, had the Chapter 91 request been timely answered, is barred." H.J. Bailey Co. v. Township of Neptune, 399 N.J. Super. 381, 387, 24 N.J. Tax 268, 274 (App. Div. 2008) (citations omitted). See also Ocean Pines, 112 N.J. at 11 ("in light of the data available to the assessor").

Since a reasonableness hearing is "sharply limited in both its substantive and procedural aspects," it "may be disposed . . . in summary fashion, without the taking of testimony." Ocean Pines, 112 N.J. at 11, 12. With these limitations, a taxpayer faces a significant hurdle overcoming the presumption of correctness which attaches to every assessment. Pantasote Co. v. City of Passaic, 100 N.J. 408, 412 (1985) (presumption); Clinton Fountain Motel, L.P. v. Township of Clinton, 18 N.J. Tax 486, 488 (App. Div. 1999) (burden). There is little doubt a reasonableness hearing is something less than the plenary hearing guaranteed in the normal course of filing a tax court complaint. The limitations of a reasonableness hearing "essentially closes the courthouse door on the taxpayer's right to appeal an assessment." Southland, 21 N.J. Tax at 579.

Courts must read the provisions of Chapter 91 narrowly and strictly construe its provisions against the municipality due to the severity of the consequences faced by taxpayers. The potential "limitation on a taxpayer's appeal rights is material,

substantial, and significant. As a result, our courts have been reluctant to grant Chapter 91 motions unless a municipality can demonstrate strict compliance by the assessor with the letter and purpose of the statute." J & J Realty Co. v. Township of Wayne, 22 N.J. Tax 157, 163-64 (Tax 2005) (citing numerous other decisions).

## III.    WHAT IS CERTIFIED MAIL?

Certified mail is a product of the Postal Service that provides signed proof of delivery. Green v. City of East Orange, 21 N.J. Tax 324, 333 (Tax 2004). Domestic Mail Manual (DMM) § 503.3.1.1 (Oct. 6, 2024). See also 39 C.F.R. § 111.1 (incorporating DMM by reference into the Code of Federal Regulations); Postal Service Manual (PSM) § 168.1 (1978) (manual in effect at time of enactment of Chapter 91); 39 C.F.R. § 111.1 (1978) (incorporating PSM by reference into Code of Federal Regulations). See also Ravenscroft Homeowners Assoc., Inc. v. Derroisne, 473 N.J. Super. 278, 281 (Law Div. 2021) (discussing incorporation by reference of DMM into regulations). Contrast this with a certificate of mailing, another product of the Postal Service that provides proof of mailing, but not proof of delivery.[2] DMM § 503.5.1.1. See also PSM § 165.1.

---

[2] Certified mail can also provide proof of mailing if the sender presents the mailing to a Postal Service employee instead of depositing into a mailbox. DMM § 503.3.2.1(d); PSM § 168.44(d).

Prior to 1955, a sender obtained a signed proof of delivery by using registered mail, a service available since 1855. Pub. L. No. 33-173, § 3, 10 Stat. 641, 642 (1855). However, this type of service is expensive and slow since the Postal Service handles registered mail outside the normal mail stream with a detailed chain of custody and additional security.[3] DMM § 503.2.1.1 (chain of custody). To reduce the time and cost entailed by using registered mail, the Postmaster General introduced certified mail service in 1955. New Postal Service, N.Y. Times, Apr. 27, 1955, at 34. With certified mail, a sender still gets a signed proof of delivery, but the mail moves through the regular mail stream, thus reducing time and cost. DMM § 503.3.1.1 (in regular mail stream); DMM app. 3 (comparison of costs). Shortly thereafter, many states, including New Jersey, started allowing certified mail whenever a statute specifies registered mail. N.J.S.A. 1:1-2; L. 1955 c. 226, § 1; 1955 Cal. Stat. ch. 1668, § 1; 1955 Ala. Laws no. 411, § 1; 1955 Ohio Laws 1164; 1955 S.C. Acts no. 234, § 69; 1955 N.H. Laws ch. 242, § 1; 1955 Wis. Sess. Laws ch. 448, §§ 1, 2; 1955 Conn. Pub. Acts no. 22, § 1; 1955 Mass. Acts ch. 683; 1956 Ariz. Sess. Laws ch. 30, § 1; 1956 Mich. Pub. Acts no. 147.

The procedures for delivery of registered mail and certified mail are the same. DMM § 508.1.1.7. The current procedure is the same as when the Legislature

---

[3]  Registered mail is so secure that certain classified documents with the marking of "secret" can be sent domestically via this service. 32 C.F.R. § 2001.46(c)(2).

enacted Chapter 91 in 1979. See PSM §§ 168.51, 161.41. Before physically accepting a certified letter, the recipient can view the sender's name and address so long as a Postal Service employee holds the letter. DMM § 508.1.1.7(a); PSM §§ 161.41, 168.51. The recipient may not receive or open the letter before the Postal Service obtains a signature and the signer legibly prints a name upon the applicable form, label or data collection device.[4] DMM § 508.1.1.7(b); PSM §§ 161.41, 168.51. See also 22429 Postal Bulletin 42 (Nov. 26, 2015) (amendments to Handbook M-41 allowing signature on data collection device); 39 C.F.R. § 211.2(a)(3) (handbooks as regulations). If no one is available, the Post Service leaves notice of mail awaiting a signature. DMM § 508.1.1.7(f); PSM §§ 161.44, 168.51.

The Postal Service maintains a record of the delivery including the recipient's signature and name. DMM § 503.3.1.1; PSM § 168.65. While basic certified mail only has a signed delivery receipt, a sender can request a return receipt (either a

---

[4] In addition, a Postal Service employee can request an acceptable form of identification. DMM §508.1.1.7(c); PSM §§ 161.41, 168.51.

paper green card or electronic) as an extra service for an additional fee.[5] [6] DMM §

503.3.1.1. See also PSM § 168.44(b). A sender can request electronic verification

of delivery and delivery attempts. DMM § 503.3.1.1.

To be clear, a return receipt is an optional item that is in addition to the

delivery receipt. DMM §§ 503.6.1.1, 503.1.4.1; PSM § 165.241(a). As noted by

Judge Bianco in Green, "[i]n the context of certified mail, it is important to note that

there is a difference between the delivery receipt (which is maintained by the USPS)

and a return receipt (which is returned to the sender)." [7] Green, 21 N.J. Tax at 334.

See also Columbus Prop. Inc. v. ISKS Realty Corp., 621 N.Y. Supp. 2d 277, 279

(N.Y. Civ. Ct. 1994). The bottom line is certified mail requires a signature on the

delivery receipt, regardless of whether a sender requests a return receipt.

---

[5] Initially, the signature on the delivery receipt could be used to generate the electronic return receipt. 22137 Postal Bulletin 43 (Sept. 16, 2004). Later, the signature on a data collection device could be used as well. 22429 Postal Bulletin 42 (Nov. 26, 2015).

[6] The return receipt can also provide the recipient's actual delivery address. DMM § 503.6.1.1; PSM § 165.241(a).

[7] In Green, the return receipt card did not have a signature. 21 N.J. Tax at 333. This court suggested that the municipality could have attempted to inspect a copy of the delivery receipt for a signature. Id. at 336. This court also noted that while Chapter 91 does not require the purchase of a return receipt, "the utilization of return receipt service along with certified mail service aids in establishing actual receipt." Id. at 334. This is critical when the Postal Service no longer has the delivery receipt. Postal Operations Manual § 813.24 (2-year retention); 39 C.F.R. § 211.2(a)(2) (manual as regulation).

IV.    AS APPLIED TO THIS CASE

The assessor first sent a Chapter 91 request to the taxpayer by regular mail. Not receiving a response and apparently realizing insufficient service for purposes of invoking Chapter 91, the assessor resent the request as certified mail on October 29, 2024.  The Postal Service did not deliver the certified mail.  Postal Service records indicate the last status as "In Transit to Next Facility, Arriving Late." Undeterred, the municipality asserts the mere act of sending the Chapter 91 request by certified mail satisfies the statutory requirement.

A letter sent certified mail serves two purposes.  First, it provides proof of delivery by obtaining the signature of the recipient.  Second, seeking a signature puts a recipient on notice that the mailing contains something important requiring immediate attention.  The Legislature on many occasions mandated certified mail for notices having significant impact.  See, e.g., N.J.S.A. 54:50-6.1 (certain tax assessments); N.J.S.A. 40:55D-12 (notice of zoning application to adjoining property owners); N.J.S.A. 2A:18-61.2 (certain eviction notices); N.J.S.A. 39:3-40.3 (notice by municipality of sale of impounded vehicle).

The act of signing (or being asked to sign) drives home the point the recipient will be held accountable for failing to act, or at the very least, cannot be heard to complain if an adverse action occurs.  "It is common sense that an individual would take special notice of a communication that required his signature upon receipt."

11

First Am. Bank of Md. v. Shivers, 629 A.2d 1334, 1343-44 (Md. Ct. Spec. App. 1993). "A written document, particularly one sent by certified mail, conveys a message that the contents of the document are important." Harrison v. Employment Appeal Bd., 659 N.W.2d 581, 587 (Iowa 2003). The recipient is likely to "more deliberately reflect on his options and the ramifications of his decision." Ibid.

Here, there is no proof of a signature request alerting the taxpayer of a significant legal notice awaiting its attention. The last anyone heard was that the certified mail was in transit to the next facility and arriving late. Requesting a signature serves an important benefit to both parties. For the municipality, it proves delivery. For the taxpayer, it raises awareness of the impact of the Chapter 91 request. Even if a taxpayer does not accept the certified mail, it has the salutary effect of alerting a taxpayer of the mail's impact. Regular mail does not accomplish these goals.

"Certified mail" is the technical name for signature verified delivery service provided by the Postal Service. "[T]echnical terms, or terms of art, having a special or accepted meaning in the law, shall be construed in accordance with that meaning." Lee v. First Union Bank, 199 N.J. 251, 258 (2009). See also N.J.S.A. 1:1-1. It is fair to presume that at the time of adoption of Chapter 91 the Legislature was familiar with what "certified mail" entailed. Both then and now, the recipient must sign for the notice. PSM §§ 161.41, 168.51. See also DMM § 508.1.1.7(b) (current version).

Also, the name of the recipient must legibly appear on the receipt. Ibid. If the Legislature wanted to require something less, it would have said so. The Legislature could have chosen to have a Chapter 91 request merely sent by regular mail. Or, if all the Legislature wanted was proof of mailing, it could have merely mandated a certificate of mailing.[8] DMM § 503.5.1.1, PSM § 165.1. See, e.g., N.J.S.A. 2A:18-73. Due to its importance, a Chapter 91 request requires a signature. Seeking a signature also puts the recipient on notice of the importance of the request. Certified mail has always required more than mere delivery.[9]

The Legislature reasserted the necessity of a signature when it expanded the definition of certified mail in 2015 to include private express carrier services providing a confirmation of mailing. L. 2015, c. 251, § 1; N.J.S.A. 1:1-2. The requirements of the confirmation of mailing mirror the information provided by the Postal Service. Namely, the confirmation of mailing "shall include, at a minimum confirmation of" fact of mail[ing], compare DMM § 503.3.2.1(d); time of mailing, compare DMM § 503.3.2.1(d); date and time of delivery, compare DMM § 503.3.1.1; attempted delivery, compare DMM § 503.3.1.1; signature, compare

---

[8] Certified mail does not provide proof of mailing unless presented to a Postal Service employee for mailing. PSM § 168.44(d), DMM § 503.3.2.1(d).

[9] Certified mail is more than regular first-class mail with tracking. Tracking without a signature is not available for first-class mail. It is available for other mail such as priority mail. DMM § 503.1.4.1.

DMM § 508.1.1.7(b); or similar information for confirmation or proof associated with the delivery service, compare, e.g., DMM §§ 508.1.1.7(b) (legibly printed name of recipient), 503.6.1.1 (delivery address). L. 2015, c. 251, § 1; N.J.S.A. 1:1-2.

This court is not suggesting that a taxpayer can avoid Chapter 91's negative consequences by not signing for the certified mail. This case is unlike Towne Oaks at South Bound Brook v. Borough of South Bound Brook, 326 N.J. Super. 99 (App. Div. 1999). In Towne Oaks, the assessor sent the request via regular and certified mail. 326 N.J. Super. at 101. Service of a Chapter 91 notice was valid despite the certified mail going unclaimed. Ibid. The Postal Service left repeated notices to claim the Chapter 91 request. Ibid. A taxpayer cannot thwart the process by failing to provide a signature. See Ibid.

In Cardinale v. Mecca, 175 N.J. Super. 8 (App. Div. 1980), the intended recipient of an insurance cancellation notice moved and left a forwarding address with the Postal Service. Id. at 11. However, after one year, the forwarding order on file with the Postal Service expired. Id. at 11-12. See DMM 507.2.1.1. More than a year after the insured moved, the insurer mailed the notice by certified mail to the insured's old address. Id. at 12. The Postal Service did not forward the notice to the recipient's new address. Ibid. The court held the attempt at service sufficient. Ibid.

The common thread in these two cases is the intended recipient controlled the actual delivery of the certified mail. In Towne Oaks, despite documented attempts

14

by the Postal Service to obtain a signature, the notice went unclaimed. 326 N.J. Super. at 101. In Cardinale, the intended recipient allowed a forwarding order to expire without notifying the sender of an updated address. 175 N.J. Super. at 11-12.

There is not any evidence that taxpayer avoided signing for the request or failed to keep its address current. On the other hand, knowing she had sent the Chapter 91 request by certified mail, the assessor had the ability to track the status or await the return receipt. See DMM § 503.3.1.1. (electronic verification of delivery or delivery attempt). Without a signed return receipt or a returned unclaimed Chapter 91 request, the solution is to resend the certified mail request.

In any event, the root cause of the problem is a third party, the Postal Service, failing to deliver the certified mail. Chapter 91 dictates the use of certified mail to effectuate valid service. The taxpayer did not refuse to accept the certified mail. The municipality did not fail to send the notice by certified mail. When neither party is blameworthy, "deciding [the municipality's] motion requires a balancing of the impact on [taxpayer] of the granting of the motion against the impact on [the municipality] and the assessing process of the denial of the motion." J & J Realty, 22 N.J. Tax at 164. This balancing requires consideration of the case law's preference to allow an appeal to fulfill taxpayer's right to challenge tax assessments. Id. at 163-64.

"When an assessor has failed to receive a response to a [Chapter 91] request for information, the impact on the [municipality] and the assessor resulting from denial of a Chapter 91 motion is of a far lesser magnitude than the impact . . . on a taxpayer's appeal rights resulting from the granting of the motion." Id. at 165. The Legislature dictated certified mail service. The municipality cannot shift to the taxpayer the failure of a third party, the Postal Service, to deliver the certified mail. The municipality paid for certified mail service and unfortunately got something less. The municipality should raise the issue with the local postmaster.[10]

A taxpayer surviving a Chapter 91 motion does not win anything but the right to contest an assessment in court. A challenge to an assessment could also benefit the municipality and other taxpayers. In most cases the court is free to increase as well as decrease the assessment. Campbell Soup Co. v. City of Camden, 16 N.J. Tax 219, 226-27 (Tax 1996). In other words, the court can peg the assessment at the correct amount. This comports with the overarching goal of Chapter 91 of assessors obtaining accurate information for assessments.

V. CONCLUSION

For the foregoing reasons, the court denies the municipality's motion.

---

[10] Technically, a refund would be due for the failure of the Postal Service to provide certified mail service. DMM § 604.9.2.3(e).

16